**Bruce Daniel WESTLEY, a minor by his mother and natural guardian, Mrs. Jane Westley, Plaintiffs,**

v.

**Douglas ROSSI, Alfred Norberg, Stanley Wilenski, Dr. John Weber, Lyle Bourdon, Spencer Nelson, Robert Smith and Harry Norr, Defendants.**

No. 5-69 Civ. 50.

United States District Court
D. Minnesota,
Fifth Division.

Oct. 9, 1969.

**708**

William I. Kampf, St. Paul, Minn., for plaintiff.

Rosenmeier & Simonet, by Gordon Rosenmeier, Little Falls, Minn., for defendants.

Korstad, Pokorny, Brophey & Lucas, by William B. Korstad, Minneapolis, Minn., for Minnesota Ass'n of School Administration.

Minnesota Ass'n of Secondary School Principals requested and was granted permission to file a brief amicus curiae.

NEVILLE, District Judge.

In conflict here is a 17 year old boy (appearing by his mother as natural guardian) who wears his hair at shoulder length and the members of the Board of Education, having jurisdiction over the Little Falls, Minnesota public high school where the school authorities adopted a rule providing: "Boys should have neat conventional male haircuts and be clean shaven." On August 25, 1969 at the opening of the fall term which would have started plaintiff's senior year he was brought or sent into the principal's office. The principal testified at trial that plaintiff's long hair was not combed, that he wore sandals and no socks and that his feet were dirty. He was told in substance by the principal to "shape up and cut your hair" before he attempted, or would be allowed, to enroll in school. "Shape up" to the principal meant clean up.

The next day plaintiff attended school in the same condition but was not permitted to stay even through the first hour of classes. The third day, August 27th, after the principal had called plaintiff's mother on the telephone, plaintiff and his mother appeared at the principal's office. At this time plaintiff wore socks but his hair was the same shoulder length. Since that time he has not attended school nor has he been permitted so to do without shortening his hair. On the witness stand the principal testified in effect that as of today he would not recommend readmission of plaintiff with his present hair style. The school's superintendent and another member of the Board testified along similar lines, although the superintendent decried the fact that plaintiff did not have an appearance at school's opening as he had in court, for he anticipated some middle ground might have been found and negotiated. In court plaintiff was neat appearing and cleanly, though his hair fell below his coat collar in the rear.

Plaintiff testified that he recognized he was an individualist, that he differed from the norm, first, because he was not athletic and did not compete in sports;

second, because his family is a well-to-do family in Little Falls; and third, because his political and other beliefs are not the same as the majority of his peers, i. e., his contemporaries. He recognized that resentment of other students toward him has existed since the time of his sophomore year when his hair was not long, identified by him as a fairly small group of larger boys who both threatened him and on one or more occasions beat him physically. He stated that even with short hair, this same group of boys still might resent him.

Plaintiff was an A and B student in grade school and through the first year of high school. In his sophomore and junior years at high school his grades apparently became B's and C's. Plaintiff testified that he had not cut his hair since last March or early April; that he feels he has a right to wear his hair as he wishes; that he is and has been aware of a rule against long hair and expected on his return to school for his senior year in August that he might well be the subject of attention, suspension or expulsion.

Plaintiff asserted over and over again on the witness stand that he is perfectly willing to and will comply with all of the rules and dress code of the Little Falls Public High School except for the length of his hair; that he will wear socks and sandals and will govern his other dress according to the rules. He testified that he washes his hair every two days at the same time he takes a shower bath and that he keeps it combed.

■ Defendants contend fundamentally that their action is reasonable and appropriate in the premises and that they are not unreasonably discriminating against plaintiff and have good cause for enforcing the rule, at least as to this student. Plaintiff foundations his cause of action on the Civil Rights Act, 42 U.S. C. § 1983 which provides:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

It long has been settled that actions of a school board are "state action" within the meaning of the above statute. The question here is whether there has been a violation of plaintiff's constitutional rights.

■ Several reasons are cited in support of defendants' contentions and will be treated seriatim: *First*, defendants have attempted to show and apparently to rely to some extent on the fact that plaintiff is different, a nonconformist, an individualist, apparently not well liked by his contemporaries and guilty of deviating conduct other than hair style. No other reason than the dress code was seriously asserted by defendants at the trial or in the pleadings. Though the court received defendants evidence directed along this line, its materiality can well be questioned as applied to this case. The fact of prior trouble with other boys before he had long hair was stressed on cross-examination by defendants. The defendants also introduced and the court received in evidence a school notebook which plaintiff admitted was his and which contained on the cover in his handwriting an obscene word written in two or three different ways. Defendants offered a photostatic copy of pages of plaintiff's 1968–69 high school annual publication which, had been found together with the notebook in a laboratory in the school and delivered into the possession of the principal. The first several pages contained obscene words. Plaintiff denied that any of this was his writing, however, and in the absence of any other showing the court rejected the exhibit on the grounds of lack of foundation, there being no proof that while the book was in the laboratory some other students with malicious intent might not have written in it and then caused it to

be delivered to the principal. In any event, it is clear to the court that unless plaintiff were one who deviated from the norm, he would not insist on his present hair style. Other deviations from the norm, even to unpublicized obscenities—and there is no evidence that anyone other than the school authorities ever saw such—do not bear on the issue of plaintiff's constitutional right, if such it be, to wear his present hair style.

■ *Second,* defendants contend that the rule as to hair styles is merely advisory in nature and seem to urge that plaintiff never in fact was expelled. The court is unable fully to appreciate defendants' contention in this regard. The facts are quite clear that plaintiff was not allowed to enroll in school. The principal testified that he had authority to issue such a suspension as plaintiff received. While it is undoubtedly true that the principal may not have the final authority of ultimate expulsion it is clear that he was deputized in the case of this and several other boys to deny them the privilege of attending classes. Any inference attempted to be created that in reality plaintiff had not been denied admission to school for the last six weeks is not sound. The court suggested at the trial that if such were the fact, then plaintiff should be permitted to return tomorrow to school. The defendants were not willing so to agree. Thus whether or not the rule is advisory in the sense of being discretionary, discretion has been exercised adversely to plaintiff and he has been excluded from class.

■■ *Third,* defendants contend that " * * * the school must assume its share of responsibility for seeing to it that students dress neatly and appropriately and that they develop habits of cleanliness and good grooming." The court does not deny that to some extent —though it does not attempt to define the limits—the school has functions *in loco parentis*; that for its own preservation it must exclude persons who are unsanitary, obscenely or scantily clad, carrying communicable diseases, persons with ulterior motives desiring to disrupt

procedures, dangerous persons, etc. The court is impressed with the sincerity of witnesses Hill and Rossi that they believe they are carrying out the proper functions of an educational institution in the action that has been taken. The court does not impute to them any bad faith attempt to discriminate against this plaintiff. It seems to the court however from the evidence that there is no health hazard in permitting a student to attend with long hair whether or not combed, so long as it is clean. Certainly some if not most girls in attendance have hair as long as plaintiff's. The court cannot sustain the school board's position that it is entitled to control expression of opinion by students as evidenced by their manner of wearing their hair and dress if in fact such was clean, sanitary and no hazard to other students. A point was made that at the opening of school plaintiff appeared with dirty feet and no socks and wearing sandals. Despite plaintiff's statement on the stand that he is entitled to come to school filthy dirty if he wishes the court does not so rule nor in any way approve of such; nor in the court's view is a decision necessary on that point because it appears that by the third day plaintiff had socks on and, taking him at his word on the witness stand, he will if readmitted to school conform to the dress code in all ways except for his hair style.

The question of "good grooming" calls for a qualitative judgment and the court does not believe it can find lack of good grooming because of long hair. One need but read an opinion by Judge Wyzanski in Richards v. Thurston, 304 F. Supp. 449 (D.Mass. 9/23/69), for an historical reference to wigs worn by many of our "founding fathers." Who is to say what is "good grooming" in this day?

Both of plaintiff's parents were on the witness stand. Both indicated that they thought his hair was very unbecoming and they were not happy about his wearing it, but they stated they recognized he had a right so to do.

**Fourth,** Defendants claim that permitting extremes in dress and style will, or may well create a disciplinary problem in a high school of 960 students. It is contended that failure to be dressed properly so as to represent extremes disrupts or tends to disrupt the normal classroom and school hall routine, creates disturbances, may interfere with the teaching of classes and distract teachers and in other ways causes disturbances. There is of course no evidence that such will occur if plaintiff is readmitted for he has not been allowed to attend since the advent of his long hair. There is in fact evidence that as far back as his sophomore year, when plaintiff was not wearing long hair, he was the butt of physical attack or attacks by one or more bigger boys. The simple answer to defendants' contention is found in the language of Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), where the court said:

> "The District Court concluded that the action of the school authorities was reasonable because it was based upon their fear of a disturbance from the wearing of the armbands. But, in our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression. Any departure from absolute regimentation may cause trouble. Any variation from the majority's opinion may inspire fear. Any word spoken, in class, in the lunchroom or on the campus, that deviates from the views of another person, may start an argument or cause a disturbance. But our Constitution says we must take this risk, Terminiello v. Chicago, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1959); and our history says that it is this sort of hazardous freedom—this kind of openness —that is the basis of our national strength and of the independence and vigor of Americans who grow up and live in this relatively permissive, often disputatious society.

> In order for the State in the person of school officials to justify prohibition of a particular expression of opinion, it must be able to show that its action was caused by something more than a mere desire to avoid the discomfort and unpleasantness that always accompany an unpopular viewpoint. Certainly where there is no finding and no showing that the exercise of the forbidden right would 'materially and substantially interfere with the requirements of appropriate discipline in the operation of the school,' the prohibition cannot be sustained. Burnside v. Byars, supra, 363 F.2d at 749."

An undifferentiated fear of disturbance is not sufficient to override significant individual freedom afforded by the Federal Constitution. In the instant case there has been no convincing showing by defendants that shoulder length hair will "materially and substantially interfere with the requirement of appropriate discipline in the operation of the school." [1]

**Fifth,** defendants contend that the rule is a safety measure; that many boys take courses in manual training shop or laboratory courses where conceivably long hair might get caught in some mechanism and be dangerous. The superintendent in testifying differentiated this aspect from situations where girls wear their hair tied up with a ribbon, whereas boys do not. There is no showing that plaintiff here was registered or desired to take any courses in shop or laboratory. In any event the

---

[1]. Whether wearing one's hair at a certain length is a form of constitutionally protected expression is not a simple question. Unquestionably, it is an expression of individuality, and it may be, although the record in this case is silent on the subject, that the manner in which many younger people now wear their hair is an expression of a cultural revolt. It is the opinion of this court, however, that it is unnecessary to reach a conclusion whether wearing one's hair at a certain length falls within that category of "expression" protected by the First Amendment. See Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).

court cannot ascribe substance to this contention for at most the wearing of some protective device could be required if necessary for limited classes. Many women whose hair is as long as plaintiff's are employed in industry.

■ *Sixth*, defendants express a concern for plaintiff's personal safety. Plaintiff's own personal safety would seem under the circumstances to be a matter of his choice. There is no evidence or showing nor of course can there be that plaintiff will receive any violence, or any worse or different treatment than he did when he was a sophomore and did not wear long hair. On the witness stand it was perfectly obvious that plaintiff was not unaware of what he was doing and the possible consequences and he must be weighing this in his own mind against the desirability of exercising what he considered to be his constitutional rights. If disturbance occurs in school, the words of Judge Tuttle's dissent in L. W. Ferrell v. Dallas Independent School Dist., 392 F.2d 697 (5th Cir. 1968), seem apropos:

"These boys * * * were barred because it was anticipated, by reason of previous experiences, that their fellow students in some instances would do things that would disrupt the serenity or calm of the school. It is these acts that should be prohibited, not the expressions of individuality by the suspended students." 392 F.2d at 706.

■ *Seventh*, Defendants contend plaintiff has failed to exhaust his administrative remedies, namely an appeal to the school board and a hearing. One answer to this contention is that three times in three successive days plaintiff, the last time with his mother, was at school and at later times the mother talked to school officials over the telephone and at no time did anyone suggest to plaintiff or his mother that he had an administrative right or should pursue it. A firmer answer however is found in the decided cases. Minnesota law would seem to provide that plaintiff is entitled to a summary appeal of his temporary suspension from classes. The plaintiff's rights asserted in this case however are federal constitutional rights based upon the Fourteenth Amendment and federal statutes. It has been repeatedly held that exhaustion of state remedies is not required to sustain federal court jurisdiction of claims asserted under 42 U.S.C. § 1983. McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 482, 5 L.Ed. 2d 492 (1961); Rivers v. Royster, 360 F.2d 592, 594 (4th Cir. 1966); Ferrell v. Dallas Indep. School Dist., 261 F.Supp. 545, 549 (N.D.Tex.1966), aff'd 392 F.2d 697 (5th Cir. 1968), cert. denied 393 U.S. 508, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968) (dissenting opinion, Douglas, J.); Madera v. Board of Education, 267 F.Supp. 356, 363–364 (S.D.N.Y.1967), rev'd on other grounds, 386 F.2d 778 (2d Cir.), cert. denied, 390 U.S. 1028, 88 S.Ct. 1416, 20 L.Ed.2d 284 (1968). See Wright v. McMann, 387 F.2d 519, 522–524 (2d Cir. 1967). These and other cases are rather clear that where an action is brought under the Civil Rights Act, 42 U.S.C. § 1983, the exhaustion of State remedies is not necessary, even though injunctive relief is sought. The court therefore does not believe that the defense of non-exhaustion of administrative remedies constitutes a defense in this case.

The court does not disagree with the Minnesota cases cited in the brief submitted by defendants and the *amicus curiae* attorney. State ex rel. Ging v. Board of Education of the City of Duluth, 213 Minn. 550, 571, 7 N.W.2d 544, 556 (1942); Sellin v. City of Duluth, 248 Minn. 333, 80 N.W.2d 67 (1957); Morey v. School Board of Independent School Dist. No. 492, Austin Public Schools, 268 Minn. 110, 128 N.W.2d 302 (1964). None of these cases involved a student suspension situation and all appear to stand for the well accepted general proposition that where administrative remedies exist before one can come into State court he must exhaust the same. It seems to the court, however, under

the decisions cited hereinabove that the Federal court may proceed where the Civil Rights Act is invoked even though a State administrative remedy has not been pursued.

It was not asserted by plaintiff's counsel that the school's rule was vague, indefinite or overbroad. The court therefore does not base its decision thereon, although it can well be urged that the words "neat" and "conventional" and perhaps even the word "male" as applied to "haircuts" are general generic words and have insufficient specificity to comprise a valid rule of conduct. One cannot know what he must do to be in compliance thereunder and must rely on the discretion of the school officials ad hoc.

█ Stripped of its peripheral aspects, the court regards this case as solely a "long hair" case. Neither the United States Supreme Court nor the Court of Appeals for the Eighth Circuit has had the opportunity to pass upon the issue presented by this case. The only pronouncement, outside the denial of certiorari in *Ferrel, supra,* and though specifically stated not to be a hair style case, is Tinker v. Des Moines Independent Community School, 393 U.S. 503, 89 S.Ct. 733 (1969), a First Amendment case, where the Court stated:

"It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this Court for almost 50 years."

So plaintiff here does not lose his constitutional rights, even though not based on the First Amendment, on entering the school's domain.

The court has been cited to four United States District Court decisions where injunctive relief against school authorities in hair style cases has been granted. Richards v. Thurston, 304 F.Supp. 449 (D.Mass. 9/23/69); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala. 1969); Breen v. Kahl, 296 F.Supp. 702 (W.D.Wis.1969). See also Cirker v.

Yohe, (9/16/69) Ct. of Common Pleas, Pa. #2108 Chester County.

Among cases holding to the contrary, the only circuit court case called to the court's attention is Ferrell v. Dallas Indep. School Dist., *supra,* 392 F.2d 697 (5th Cir.) cert. denied 393 U.S. 508, 89 S.Ct. 98 (1968). Though this case can be said not to be a strong precedent because of the dissenting opinion and distinguishable on the basis that after suspension the group of students involved chided and openly defied the school administration with a phonograph record widely broadcast; yet it must be admitted that the rationale and philosophy of that court is contrary to the view herein taken by this court. Noted also is the denial of certiorari in that case. Within the last ten days a decision from the United States District Court in Indiana has refused injunctive relief in a case similar to the case at bar. Crews v. Cloncs, 303 F.Supp. 1370 (S.D.Ind. 9/17/69). See also Davis v. Firment, 269 F.Supp. 524 (E.D.La.1967).

█ This court believes that the right of plaintiff Bruce Westley to wear a hair style of his choosing is a constitutional right guaranteed by the equal protection or the due process clauses of the Fourteenth Amendment to the United States Constitution and enforceable under the provisions of the Civil Rights Act, 42 U.S.C. § 1983.

█ The restriction here is one of appearance, not based on health or morals. Quaere whether the length of a boy's hair is distractive today as would be girls scantily clad for instance so as to justify regulation. The rule here has effect beyond school, so were a school to prohibit a boy attending school with no shirt and bare to the waist, if he desires to go bare waisted in life at home or beyond the school he may take off the shirt as he leaves the school grounds. Such is not the case with hair. Even as to smoking the restriction is lost if the pupil leaves the school grounds. The hair restriction, however, invades private life beyond the school jurisdiction. The

rule is an attempt to impose taste or preference as a standard. The standards of appearance and dress of last year are not those of today nor will they be those of tomorrow. Regulation of conduct by school authorities must bear a reasonable basis to the ordinary conduct of the school curriculum or to carrying out the responsibility of the school. No moral or social ill consequences will result to other students due to the presence or absence of long hair nor should it have any bearing on the wearer or other students to learn or to be taught.

A separate order granting injunction has been entered. This memorandum will be in lieu of findings as required in Rule 52(a) of the Federal Rules of Civil Procedure.