Carlos **CALBILLO**

v.

**SAN JACINTO JUNIOR COLLEGE**

**Civ. A. No. 69–H–1012.**

United States District Court
S. D. Texas,
Houston Division.

Nov. 17, 1969.

David Berg, Houston, Tex., for plaintiff.

Stanley D. Baskin, Baskin & Fakes, Pasadena, Tex., for defendant.

*Memorandum and Order*

SINGLETON, District Judge.

This is an action brought pursuant to 42 U.S.C. § 1983 (1964). Plaintiff, Carlos Calbillo, is a student at San Jacinto Junior College, a public institution of the State of Texas.[1] Plaintiff is seeking injunctive relief against defendants, officials of San Jacinto Junior College. Plaintiff was indefinitely suspended as a student at San Jacinto Junior College for the sole reason that he had

grown a beard in violation of rules and regulations promulgated and enforced by the college authorities.[2] Plaintiff asks this Court to order his immediate readmission as a student in good standing at San Jacinto Junior College; and to enjoin defendants from continuing to enforce the regulation in question; and further, to compel defendants to expunge from plaintiff's record any mention of the disciplinary action taken.

The college regulation in question reads as follows:

"Male students at San Jacinto College are required to wear reasonable hair styles and to have no beards or excessively long sideburns."

Plaintiff grew a beard in violation of this regulation. The only reason given by college authorities for the indefinite suspension of plaintiff was his infraction of this rule. Both Dr. Spencer, the college president, and Dr. Marcom, the academic dean, admitted that plaintiff had not previously been disciplined by college authorities and that the only reason for the present disciplinary action was plaintiff's violation of the "beard" rule.

The only question before the Court is whether the rule under which plaintiff was suspended is constitutionally permissible.

The establishment of an educational program requires the formulation of rules and regulations necessary for the maintenance of an orderly program of classroom learning. In formulating regulations, including those pertinent to the discipline of students, school officials have a wide latitude of discretion, but these officials are always bound by the requirement that the rules and regulations must be reasonable. Ferrell v.

1. San Jacinto Junior College District is a Union Junior College District established pursuant to Article 2815h of the Texas Civil Statutes.

2. Plaintiff was a student in good standing at the time of this disciplinary action. Thus, there is no question that

the only reason he was suspended was for violating the beard regulation. In addition, it is clear that this case does not raise an issue of procedural due process. Plaintiff was afforded a hearing with counsel and he does not contend that he was denied due process.

Dallas Independent School District, 392 F.2d 697 (5th Cir. 1968); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Breen v. Kahl, 296 F.Supp. 702 (W.D. Wis.1969); Zachry v. Brown, 299 F. Supp. 1360 (N.D.Ala.1967). It is not for this Court to consider whether such rules and regulations are wise or expedient, but merely whether they constitute a reasonable exercise of power and discretion on the part of school authorities. Regulations which are essential to maintain discipline on school property are reasonable. However,

"School officials do not possess absolute authority over their students. Students in school as well as out of school are 'persons' under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State. In our system, students may not be regarded as closed-circuit recipients of only that which the State chooses to communicate. They may not be confined to the expression of those sentiments that are officially approved. In the absence of a specific showing of constitutionally valid reasons to regulate * * *, students are entitled to freedom of expression of their views." Tinker v. Des Moines Independent Community School Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731, 740 (1969).

■■ Thus, the school officials are under a burden to justify this effort to regulate personal appearance whether that attempted justification be in terms of discipline, health, morals, physical danger to others, or "distraction" of others from their school work. Breen v. Kahl, supra, at 706. It must be demonstrated that the exercise of the forbidden rights would "materially and substantially interfere with the requirements of appropriate discipline in the operation of the school." Tinker v. Des Moines Independent Community School Dist., 393 U.S. at 509, 89 S.Ct. at 738, 21 L.Ed.2d at 736, quoting Burnside v. Byars, 363 F.2d 744, 749 (5th Cir. 1966).

"The decided cases clearly demonstrate that each case must be decided in its own particular setting and factual background and within the context of the entire record before the court in determining whether the rule or the action about which complaint is made is arbitrary, capricious, unreasonable or discriminatory." Ferrell v. Dallas Independent School District, supra, at 702 and cases cited therein.

In an attempt to justify the regulation in question, school officials set forth several reasons for its promulgation. The rule was first adopted and enforced in the Fall of 1967. According to school officials several things happened in the Spring and Summer of 1967 which led the Board of Regents to believe that the adoption of such a rule was advisable. First, a few people called "hippies" enrolled in the school and *one* female student was heard to protest that their odor and appearance was distracting. Second, the Board of Regents visited several California campuses and observed at first hand what the campus atmosphere was like where "those people" (presumably "hippies") were in school in large numbers. Third, school officials received a report from the Director of the Federal Bureau of Investigation which pointed out that riots and demonstrations on college campuses were being carried out by students who were moving from one campus to another. He advised college administrators to look over their student bodies. The administrators of San Jacinto Junior College observed their student body and found that some of their "hippies" were from Berkeley. And, finally, the school officials observed that long hair and beards are the "badge of hippies." So they adopted a rule which would keep "these people" off their campus.

It is interesting to note that none of the reasons given in justification of the rule relate to any disruptions on the San Jacinto Junior College campus. And, in fact, this record is completely devoid of evidence that any type of disruption has been occasioned by the wearing of

beards on campus. Thus, the present case is distinguishable from Ferrell v. Dallas Independent School Dist., supra, which upheld a school regulation banning "Beatle" type haircuts. *Ferrell* is replete with testimony of campus disruptions. Whereas in Zachry v. Brown, *supra,* there was no testimony that the offending hair style had any effect upon the health, discipline, or decorum of the institution. The district judge found that the regulation in question was promulgated solely because the school administrators disliked what they considered exotic hair styles. In holding the regulation unconstitutional, the court said:

"The wide latitude permitted legislatures of the states and therefore the administrators of public colleges to classify students with respect to dress, appearance and behavior must be respected and preserved by the courts. However, the equal protection clause of the fourteenth amendment prohibits classification upon an unreasonable basis. This court is of the firm opinion that the classification of male students attending Jefferson State Junior College by their hair style is unreasonable and fails to pass constitutional muster.

"It needs to be emphasized that the defendants have not sought to justify such classification for moral and social reasons. The only reason stated upon the hearing of this case was their understandable personal dislike of long hair on men students. The requirement that these plaintiffs cut their hair to conform to normal and conventional styles is just as unreasonable as would palpably be a requirement that all male students of the college wear their hair down over their ears and collars." 299 F.Supp. at 1362.

In Breen v. Kahl, *supra,* the Federal District Court struck down a rule governing the length of hair as violative of the due process clause of the Fourteenth Amendment.[3] The court pointed to the lack of any direct evidence that the long hair distracted other students or in any way disrupted the learning process. In Griffin v. Tatum, *supra,* the court rejected the numerous reasons given by school authorities to justify a haircut rule. In holding that the haircut rule violated the Fourteenth Amendment, the court pointed out that school authorities could accomplish their purposes by methods other than having the students' heads shorn.

"The school authorities' 'justification,' or the reasons they advance for the necessity for such a haircut rule, completely fail. If combing hair or passing combs in classes is distracting, the teachers, in the exercise of their authority, may stop this without requiring that the head be shorn. If there is congestion at the girl's mirrors, or if the boys are late for classes because they linger in the restrooms grooming their hair, appropriate disciplinary measures may be taken to stop this without requiring a particular hair style. If there is any hygienic or other sanitary problem in connection with those students who elect to wear their hair longer than that presently permitted by the regulation there are ways to remedy this other than by requiring their hair shorn." Griffin v. Tatum, 300 F.Supp. at 63.

Unlike *Griffin,* in the present case there is not even the suggestion that beards would "materially and substantially" interfere with the operation of the school. The only evidence of any adverse campus reaction whatsoever was the testimony of a school official that an unidentified girl had complained of the odor and appearance of several "hippies." It must be noted that plaintiff was not one of these students. It should be further noted that plaintiff's appearance

---

3. In the recent case of Westley v. Rossi, 305 F.Supp. 706 (D.C.Minn.1969), Judge Neville ruled that the Fourteenth Amendment was violated by a rule requiring "neat, conventional" haircuts, since the regulation establishes a requirement not reasonably related to good order, safety or sanitation.

in the courtroom was that of a well-groomed, although bearded, student. Regardless, as pointed out in *Griffin*, any problem of hygiene could be resolved by a rule directed to that problem rather than to the length of hair. As to the girl's objection to the appearance of the "hippies," this amounts to nothing more than a personal distaste. If in the *Zachry* case the court refused to allow school administrators to impose their personal taste in hair styles upon the students, this Court can hardly accept as a justification for the present rule that one student expressed some distaste for another student's appearance.[4]

■■ With regard to the other justifications offered for the rule, they can be resolved into the contention that beards and hair styles are a sufficient indicator of potential campus troublemakers.[5] Not only is this contention not supported by the record,[6] it is not supported by logic and common sense. In this Court's chambers are portraits of six great jurists, starting with Moses and ending with Justice Holmes, one of the great justices of the Supreme Court, who died in 1935. Also included among these portraits are those of Justinian, Solon, Coke, and Marshall. All of these men had distinctive hair styles, some had mustaches, and some had mustaches

and beards. Many other examples of men who have and do wear distinctive hair styles, sideburns, beards, and mustaches could be given. Certainly, such are not a badge of a troublemaker or a malcontent. Unless there is a showing that a hair style or a manner of dress has a reasonable relationship to the health, welfare, morals, and discipline of students, a sweeping prohibition regarding same cannot in this Court's opinion be sustained. Each case must really stand upon its own factual basis. Here, we have no testimony of a relationship to the health, welfare, morals, or discipline of any student, and absent such, a broad regulation like the one we are concerned with is unreasonable and cannot be sustained.

■ From the record before the Court, it can come to no other conclusion than that the regulation in question constitutes an unreasonable classification in violation of the equal protection clause of the Fourteenth Amendment. There was no evidence of any material and substantial disruption of the school functions and the justifications offered by the school officials do not support the rule. The regulation was basically enacted to implement the personal distaste of certain school officials for beards and certain hair styles and for the beliefs

---

4. When asked why mustaches were permitted under the rule while beards were not, one school official responded that mustaches are allowed because they are generally worn by all people. Certainly, the democratization of American life has not come to the point where every whim of the majority may be enacted into a mandate for all to follow. If so, then the Bill of Rights is for naught.

5. When asked by the Court if beards make hippies, school officials admitted that a beard may not be the most accurate indicator of potential troublemakers. Yet their announced justification of the rule and their other testimony suggest that they believe that an individual who wears a beard is likely to cause trouble on campus. In apparent seriousness, one college official testified that beards and long hair represented an attitude of rebellion against school

authority and to that extent beards and long hair disrupt the operation of the school. He had observed protests on other campuses and noted that beards were in evidence among leaders of the protest.

6. Defendants contend that the Court should not be persuaded by the fact that there is no evidence of campus disruptions occasioned by beards. They point to the absence of disruptions as evidence of the efficacy of their rule. This Court cannot accept that line of reasoning. Unrealized fears cannot justify such an arbitrary classification. "In our system, undifferentiated fear or apprehension of disturbance is not enough to overcome the right to freedom of expression." Tinker v. Des Moines Independent Community School Dist., 393 U.S. at 508, 89 S.Ct. at 737, 21 L.Ed.2d at 739.

and attitudes which they thought these beards and hair styles represented. It is interesting to note in this connection that the rule forbids beards but not mustaches, and in fact testimony was presented that several students on the campus at San Jacinto Junior College wore mustaches. To continue to deny plaintiff an education by the enforcement of this unconstitutional rule would cause him irreparable harm and consequently the injunctive relief he seeks should be granted.

In holding, under the facts of this case, that the regulation in question is an unreasonable and arbitrary classification in violation of the Fourteenth Amendment, this Court is following what it believes to be the better reasoned authorities in this area. *Zachry v. Brown, supra; Breen v. Kahl, supra; Griffin v. Tatum, supra.* Courts have been reluctant to conclude whether wearing one's hair at a certain length or wearing a beard falls within that category of "expression" protected by the First Amendment.[7] Under the record in this case it will not be necessary for the Court to reach that question.

█ This record does raise a First Amendment question of a different dimension. This Court finds that the beard regulation was used as a catchall to enable school officials to deny admission to those students whose beliefs might differ from those of the school officials, clearly a First Amendment violation.

█ Finally, this case has been of some concern to the Court because it is clear that plaintiff grew his beard for the purpose of testing the rule in question. Defendants argue that to rule for plaintiff would be to undermine the authority of the college officials. The Court rejects this argument and agrees with the court in *Griffin* which stated: "Such an argument can be applied to any school rule, however, and, if accepted, would eliminate all student rights." *Id.* at 63. This Court realizes that it should not casually interfere with the functioning of the school. But, this Court also realizes that when a public agency chooses to use the awesome power of the state to deny a person access to a public education, it must do so with good reason. This Court wishes to emphasize that it supports all efforts by school officials to fashion reasonable regulations, to enforce such regulations, and to punish those who break them. Obedience is a valuable tool and respect for authority must be instilled in our young people. However, regulations promulgated upon some unrealized fear or regulations fashioned to implement personal tastes of some school officials cannot be tolerated. If defendant had chosen to suspend plaintiff for infraction of college rules relating to the well-ordered running of the campus, it would have the authority to do so. The college has some well-defined "campus behavior regulations" which, if enforced, would allow college officials to deal with campus disruptions. But instead plaintiff was suspended for growing a beard and the record reveals no reasonable connection between that rule and the functioning of the college.

7. In Ferrell v. Dallas Independent School Dist., *supra*, the Court of Appeals assumed without deciding that a hair style is a constitutionally protected mode of expression. In Tinker v. Des Moines Independent Community School Dist., *supra*, the Supreme Court distinguished the "symbolic speech" situation presented by the wearing of armbands from the hair regulation cases. The Court said: "The problem presented by the present case [*Tinker*] does not relate to regulation of the length of skirts or the type of clothing, to hair style or deportment.

[citing *Ferrell*] * * * Our problem involves direct, primary First Amendment rights akin to "pure speech.". 393 U.S. at 507, 508, 89 S.Ct. at 737, 21 L. Ed.2d at 738. If this Court were to accept defendant's position that a beard or a hair style represented an attitude of rebellion or protest, this would be a stronger case for First Amendment protection of a beard as "symbolic speech" similar to an armband. Although plaintiff invoked the First Amendment, he never claimed his beard represented any more than a personal preference.

The following quote from *Griffin* is appropriate.

"This Court must adjudicate claims of infringement of the Constitution; it does not, of course, create the controversies from which they arise. In this case, it was the school officials who created what Judge Tuttle, dissenting in *Ferrell, supra,* accurately described as 'something of a tempest in a teapot' and it is they who must accept responsibility for the consequences." Griffin v. Tatum, 300 F.Supp. at 63.

Therefore, for the reasons stated above, the injunctive relief sought should be granted.

The Clerk will notify counsel for plaintiff to draft an appropriate judgment in accordance with this Memorandum and Order for submission to the Court by November 26, 1969, after first obtaining approval of opposing counsel.