Joseph M. FARRELL, III, et al.,
Plaintiffs,

v.

Arthur SMITH, Director of Southern Maine Vocational Technical Institute, Kenneth Coombs, Assistant Director, Southern Maine Vocational Technical Institute, Joseph DeCoursey, Dean of Students, Southern Maine Vocational Technical Institute, Defendants.

Civ. A. No. 11–77.

United States District Court,
D. Maine, S. D.

March 18, 1970.

Cushman D. Anthony, Maine Civil Liberties, Inc., Portland, Me., for plaintiffs.

Sumner J. Goffin, Charles A. Lane, Portland, Me., for defendants.

OPINION AND ORDER
OF THE COURT

GIGNOUX, District Judge.

This is an action brought under the Civil Rights Act, 42 U.S.C. § 1983 (1964) to enjoin the expulsion of three hirsute students from their school. Jurisdiction is conferred by 28 U.S.C. § 1343(3) and (4) (1964). Plaintiffs are three

students at the Southern Maine Vocational Technical Institute (SMVTI), an institution supported by State and federal funds and operated under the general supervision of the Maine State Department of Education. Defendants are the Director, Assistant Director, and Dean of Students at SMVTI. Plaintiffs challenge the constitutionality of the SMVTI hair regulations as a denial of rights guaranteed to them by the First, Ninth and Fourteenth Amendments to the United States Constitution.

SMVTI is a public co-educational vocational institution located in South Portland, Maine, which currently enrolls approximately 700 students, including 14 girls, in ten training programs called "shops." Its purpose is to "provide salable skills" for service in industry. The specialized training offered by the Institute includes courses in automotive technology, building construction, electronics, machine tools, heating and air conditioning, applied marine biology, oceanography, and waste water treatment. With the exception of the federally-funded waste water treatment program, which is a one-year program, all "shops" are two-year programs. A high school diploma or its equivalent is required for admission to the student body. Tutition per year is about $500, and for the 182 boarding students, room and board is less than $500. Representatives of industry come to the school each year to recruit prospective employees from among the student body, and three-quarters of the school's graduates go directly into industrial employment.

Pursuant to the authority vested in them by statute,[1] the school officials have implemented a code of regulations covering the conduct of the students while on campus. Some of the regulations, particularly the Dress and Grooming Çode at issue here, have been de-

veloped as the result of joint student-faculty-administration deliberations. The students are represented in such matters by a student council, which is composed of two members elected from each shop and which serves as liaison with the faculty and the administration.

In the Spring of 1969, a joint student-faculty-administration committee was formed to review the then existing Dress and Grooming Code. This committee met with various members of the faculty and administration, and also solicited and received suggestions from the student body as a whole. As a result of these deliberations, a new grooming code was prepared, approved by the student council, and adopted by the administration without further change. This grooming code reads, in relevant part, as follows:

### STUDENT DRESS AND GROOMING REQUIREMENTS

(as developed by student government, faculty and administration)

Neatness of appearance and good grooming are expected of students at all times. Dress regulations are based on requirements for safety and personal hygiene. Further requirements may be imposed as they pertain to the separate departments:

1. Sideburns will not extend beyond the earlobes.

2. Hair cannot overlap a common type shirt collar, and hair must not extend beyond, or down over, the ears.

3. Beards are not allowed. Students are to be clean shaven. Deviation from this rule would require a medical permit. Mustaches are permitted but should not extend beyond the corner of the mouth, and should be neatly trimmed.

---

I. SMVTI (with other Maine vocational training schools) was created in 1947 by an appropriation of funds by the Maine Legislature and a grant of authority to the Vocational Education Board (since merged into the Board of Education). Public Laws of Maine Ch. 382 (1947). The State Board of Education currently derives its authority to operate and maintain SMVTI from 20 M.R.S.A. § 57 (1964) and § 2356 (as amended 1967).

\* \* \* \* \* \*

Any student not abiding by these regulations will be denied admittance to class. Suspension from one class means suspension from all classes.

Flagrant violations of this policy will result in suspension from the Institute.

An appeal may be initiated through the Student Council President, then to the Dean of Students if need be.

The three plaintiffs in this action entered SMVTI in the one-year waste water treatment program in October 1969. They were respectively 18, 21 and 23 years old. All had beards, long sideburns or long hair on arrival, and when informed of the hair regulations, all shaved in conformity therewith. Thereafter, in November 1969, the school sponsored (most improvidently, it would appear) a beard growing contest among the students. That contest ended on January 12, 1970, and all beards were to be shaved off immediately. On January 13 plaintiffs Farrell and Williams presented themselves unshaven at the waste water class, and were told by the instructor that they would not be permitted to attend classes until they shaved. Later in the day they saw the Dean of students, who told them that they would be suspended from the school unless they shaved. On January 14 all three plaintiffs, including plaintiff Banks, were again refused admission to the waste water class by the instructor, and later in the day were told by the Dean that they would be expelled if they failed to comply with the hair regulations. On that day this suit was commenced by plaintiff Farrell, suing for himself and on behalf of all other students who currently had beards or want-

ed to grow them. The status quo was maintained until a hearing could be had on the merits, which hearing was held on January 22. At that time the Court denied plaintiff Farrell's request to maintain the suit as a class action, but permitted Banks and Williams to intervene as parties plaintiff. The Court also denied plaintiffs' request for a preliminary injunction and took under advisement their prayer for permanent relief.[2]

The testimony of the representatives of the student body, faculty and administration who testified at the hearing on January 22 was to the following effect: The revised grooming code, including the restrictions upon beards, sideburns and long hair, was the result of the considered judgment of the student, faculty and administration representatives who participated in its preparation that student appearance is a significant factor in creating job opportunities; that beards and long hair are prejudicial to effective employment opportunities in industry; that neat appearance and good grooming of the student body enhances the image of the school and its students among prospective employers recruiting on the campus; and that the economic welfare of the students would be best served by the hair requirements incorporated in the code. Additionally, the Dean of Students, who also serves as director of all job placement at SMVTI, testified that he has had wide experience and is closely familiar with the requirements of industrial employers;[3] that the appearance of the students was a definite factor considered by prospective employers recruiting on the campus; and that a relaxation of the grooming code would

2. The Court has been informed that all three plaintiffs have since shaved and been readmitted to classes for the current semester, but persist in their desire to grow beards and long hair if they are permitted to do so and to remain in school.

3. The Dean's educational and professional background is entirely in this area. He holds a Master's Degree in Administration and Psychology of Personnel Relations, is an active member in the Southern Maine Personnel Management Association, a member of the New England Secondary College Association, and a regular participant in industrial personnel seminars.

jeopardize the good rapport, which over a period of twenty years the school has established with industrial employers, and would adversely affect the earning prospects of the student body as a whole. This testimony stands unshaken and uncontradicted. It is accepted by the Court.

At the time of their threatened expulsion, the three plaintiffs had beards, long sideburns or long hair which failed to conform to the standards prescribed by the code.[4] No reason for their threatened expulsion is asserted other than violation of the hair code. The sole basis upon which defendants justify the restrictions upon beards and hair styles imposed by the code is the furthering of the employment prospects of the students upon their graduation from the school. The record contains no suggestion that plaintiffs' hair styles present a health problem, create a risk of physical injury to plaintiffs or to others, are indecent, interfere with the academic performance of plaintiffs or other students, or create disciplinary problems or disturbances of any kind; and defendants do not attempt to support the code upon any of these grounds.

At the outset, it is important to note what is *not* at issue in this case. First, it is not contended by any of the plaintiffs that their beards and hair styles are compelled by any religious considerations. Thus, whether this code would conflict with the free exercise of religious beliefs is not at issue here. *See* West Virginia State Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Second, plaintiffs have not urged that any health, medical or cosmetic reasons necessitate their whiskers, although apparently a

sufficient showing of such could result in an exemption from the hair code.[5] Third, plaintiffs make no contention that they were in any way attempting by their hair styles to communicate anything in particular. These plaintiffs uniformly stated that they grew their hair because they liked it that way and thought they looked good with whiskers; they expressly disclaimed that any element of protest was involved. *See* Tinker v. Des Moines Independent Community School District, 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); Wright, The Constitution on the Campus, 22 Vanderbilt L.Rev. 1027, 1037–1059 (1969). Fourth, plaintiffs disavow any argument that the regulations in question here are too vague or overly broad. *See* Soglin v. Kauffman, 295 F.Supp. 978 (W.D.Wisc.1968). Finally, no allegation is made, nor is there any evidence, that procedural due process has been denied. Neither the procedure used in adopting the code, nor the steps followed in disciplining plaintiffs are complained of here. *See* Dixon v. Alabama State Board of Education, 294 F.2d 150 (5th Cir.), cert. denied, 368 U.S. 930, 82 S.Ct. 368, 7 L.Ed.2d 193 (1961); General Order on Judicial Standards of Procedure and Substance in Review of Student Discipline in Tax Supported Institutions of Higher Education, 45 F.R.D. 133, 147–148 (W.D. Mo.1968); Wright, *supra*, 22 Vanderbilt L.Rev. at 1059–1082.

The sole issue in this case is whether the SMVTI hair code as applied to these plaintiffs unconstitutionally infringes upon any substantive right protected against state impairment by the Fourteenth Amendment to the Constitution of the United States. In the cir-

---

4. At the hearing before this Court plaintiff Farrell was wearing a "Lincoln" type beard, a mustache which joined the beard and long hair which hung over his forehead and ears. Plaintiff Banks sported a large goatee, a mustache which reached down to join the goatee and long bushy sideburns. Plaintiff Williams had extra-long sideburns which just missed

joining a clipped mustache. So far as appears, the appearance of the three plaintiffs had not materially changed between the date of their threatened expulsion and the day of the hearing.

5. As noted above, the code permits deviations from the requirement that students are to be clean shaven upon the furnishing of a medical permit.

cumstances of this case, the Court concludes that it does not.

 It is now clear that students at a public institution are entitled to the protection of the rights guaranteed by the Constitution, "applied in light of the special characteristics of the school environment." Tinker v. Des Moines Independent Community School District, *supra*, 393 U.S. at 506, 89 S.Ct. at 736; Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); West Virginia State Board of Education v. Barnette, *supra*; Breen v. Kahl, 419 F. 2d 1034 (7th Cir. 1969); *cf.* In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); *see generally* Wright, *supra*, 22 Vanderbilt L.Rev. at 1027–1037. As the Supreme Court observed in *Tinker*:

> In our system, state-operated schools may not be enclaves of totalitarianism. School officials do not possess absolute authority over their students. Students in school as well as out of school are "persons" under our Constitution. They are possessed of fundamental rights which the State must respect, just as they themselves must respect their obligations to the State. 393 U.S. at 511, 89 S.Ct. at 739.

Indeed, "[t]he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Epperson v. Arkansas, *supra*, 393 U.S. at 104, 89 S.Ct. at 270 (quoting with approval from Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 5 L.Ed. 2d 231 (1960)).

 This Court also accepts the view that the right to grow a beard or to wear one's hair at any length is an aspect of personal liberty protected by the United States Constitution. Breen v. Kahl, *supra*; Richards v. Thurston, 304 F. Supp. 449 (D.Mass.1969) aff'd 424 F.2d 1281 (1st Cir. 1970); Griffin v. Tatum, 300 F.Supp. 60 (M.D.Ala.1969); Zachry v. Brown, 299 F.Supp. 1360 (N.D.Ala.1967); Calbillo v. San Jacinto Junior College, 305 F.Supp. 857 (S.D. Tex.1969); Westley v. Rossi, 305 F. Supp. 706 (D.Minn.1969). For present purposes it is unnecessary to resolve the much mooted question of whether this right is "symbolic speech" and hence a form of self-expression protected by the First Amendment, *see* Tinker v. Des Moines Independent Community School District, *supra*; [6] or is derived from the Ninth Amendment or found in the "penumbra" of other constitutional provisions. *See* Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).[7] It is sufficient that the right

6. In Tinker the Supreme Court held that black armbands worn by students to protest the Vietnam war were a form of symbolic speech protected by the First Amendment. The Court flatly stated, however, that "[t]he problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment." 393 U.S. at 507–508, 89 S.Ct. at 737. And very recently in Cowgill v. California, 396 U.S. 371, 90 S.Ct. 613, 24 L.Ed.2d 590 (1970), in which the Court dismissed an appeal by a convicted flag mutilator, Mr. Justice Harlan, concurring, noted:

> The Court has, as yet, not established a test for determining at what point conduct becomes so intertwined with expression that it becomes necessary to weigh the State's interest in proscribing conduct against the constitutionally

> protected interest in freedom of expression.

Research discloses that only two courts have determined that beards or long hair in and of themselves are a constitutionally protected mode of expression. Meyers v. Arcata Union High School District, 269 Cal.App. 633, 75 Cal.Rptr. 68, 72–73 (1969); Finot v. Pasadena City Board of Education, 250 Cal.App.2d 189, 58 Cal.Rptr. 520 (1967). On the other hand, the vast majority of recent "longhair" cases have, like this Court, found it unnecessary to decide the question. *See, e. g.,* Griffin v. Tatum, *supra*, 300 F.Supp. at 62; Breen v. Kahl, 296 F. Supp. 702, 705 (W.D.Wisc.1969), aff'd, Breen v. Kahl, 419 F.2d 1034 (7th Cir. Dec. 3, 1969).

7. Such appears to have been the view of Judge Wyzanski in Richards v. Thurston, *supra*, 304 F.Supp. at 452; of Judge

exists and is protected from state infringement by the Due Process Clause of the Fourteenth Amendment.[8] Breen v. Kahl, *supra,* 419 F.2d at 1034; Griffin v. Tatum, *supra,* 300 F.Supp. at 62.

It must be recognized, however, that school authorities are entitled to make and enforce reasonable regulations for maintaining an effective school system and that the courts should refrain from interference with the functions of the school authorities unless their action is so arbitrary and unjustified as to constitute a significant encroachment upon a personal liberty. Tinker v. Des Moines Independent Community School District, *supra,* 393 U.S. at 507, 89 S.Ct. 733; Ferrell v. Dallas Independent School District, *supra,* 392 F.2d at 703; Griffin v. Tatum, *supra,* 300 F.Supp. at 62; Breen v. Kahl, *supra,* 296 F.Supp. at 707. The line to be drawn is a delicate one. On the one hand, in Epperson v. Arkansas, *supra,* the Supreme Court has very recently stated:

> Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values. 393 U.S. at 104, 89 S.Ct. at 270.

On the other hand, in West Virginia State Board of Education v. Barnette, *supra,* the Supreme Court made plain that the courts may and should intervene when liberty in a public school is threatened by a regulation promulgated by a state board of education. In that case, the Court pointed out that school boards have "important, delicate, and highly discretionary functions, but none that they may not perform within the

---

Doyle in Breen v. Kahl, *supra,* 296 F. Supp. at 705–706; and of Judge Johnson in Griffin v. Tatum, *supra,* 300 F.Supp. at 62.

8. Plaintiffs also argue that the hair code violates the Equal Protection Clause of the Fourteenth Amendment in that it creates an invidious classification between those who wish to grow beards or long hair and those who do not. Other courts have found an Equal Protection violation in similar regulations. Griffin v. Tatum, *supra,* 300 F.Supp. at 62; Zachry v. Brown, *supra,* 299 F.Supp. at 1362; Calbillo v. San Jacinto Junior College, *supra,* 305 F.Supp. at 861–862; *see also* Ferrell v. Dallas Independent School District, 392 F.2d 697, 705 (5th Cir.) (Tuttle, J. dissenting), cert. denied, 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (1968). But this Court simply cannot accept the view that the present problem can be rationally analyzed in equal protection terms. The code applies equally and impartially to all male students at SMVTI, and in the view of this Court it cannot be said that the school has invidiously "classified" those students who wish to grow beards or long hair and those who do not. *Cf.* North Carolina v. Pearce, 395 U.S. 711,

722–723, 89 S.Ct. 2089, 23 L.Ed.2d 656 (1969). However, even on the assumption that the Equal Protection Clause is applicable here, the same considerations which have led this Court to conclude that the State's subordinating interest in the regulation is sufficiently compelling to withstand attack under the Due Process Clause, *see infra,* are sufficient to overcome a challenge under the Equal Protection Clause. The State's underlying interest in the regulation is sufficient whether its validity is measured by the traditional test for a denial of equal protection: that the challenged classification rests on grounds wholly irrelevant to the achievement of a valid state objective, McGowan v. Maryland, 366 U.S. 420, 425–426, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961); or by the more recent requirement that the state must demonstrate a "compelling" interest to support the regulation. Cipriano v. City of Houma, 395 U.S. 701, 706, 89 S.Ct. 1897, 23 L.Ed.2d 647 (1969); Kramer v. Union Free School District No. 15, 395 U.S. 621, 625–630, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969); Shapiro v. Thompson, 394 U.S. 618, 634, 89 S.Ct. 322, 22 L.Ed.2d 600 (1969). *See* Turner v. Fouche, 396 U.S. 346, 90 S.Ct. 532, 24 L.Ed.2d 567 (1970).

limits of the Bill of Rights." 319 U.S. at 637, 63 S.Ct. at 1185, 87 L.Ed. 1628. Rejecting the contention that the courts should not enter a field where they possess no special competence, the Court said:

> * * * [W]e act in these matters not by authority of our competence but by force of our commissions. We cannot, because of modest estimates of our competence in such specialties as public education, withhold the judgment that history authenticates as the function of this Court when liberty is infringed. *Id.* at 640, 63 S.Ct. at 1186.

In order for the State through its school officials to sustain a regulation impairing a fundamental freedom, such as that here involved, the State's subordinating interest in the regulation must be compelling, Griswold v. Connecticut, *supra,* 381 U.S. at 497, 85 S.Ct. 1678 (Goldberg, J. concurring); Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 4 L.Ed.2d 480 (1960). Such a regulation bears "a substantial burden of justification," Griswold v. Connecticut, *supra,* 381 U.S. at 503, 85 S.Ct. 1678 (White, J. concurring); Richards v. Thurston, *supra,* 304 F.Supp. at 452; Griffin v. Tatum, *supra,* 300 F.Supp. at 62; Breen v. Kahl, *supra,* 296 F.Supp. at 706. In United States v. O'Brien, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968), the Supreme Court defined the state's burden of justification in the following terms:

> * * * [A] government regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest. *Id.* at 377, 88 S.Ct. at 1679.

The decided cases also clearly demonstrate that in determining whether the state has sustained its burden, each case must be decided upon its own particular facts. Dennis v. United States, 341 U.S. 494, 510, 71 S.Ct. 857, 95 L.Ed. 1137 (1951); West Virginia State Board of Education v. Barnette, *supra,* 319 U.S. at 627, 63 S.Ct. 1178, 87 L.Ed. 1628; Thornhill v. State of Alabama, 310 U.S. 88, 96, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); Ferrell v. Dallas Independent School District, *supra,* 392 F.2d at 702.

It is necessary, therefore, to determine in the present case whether the defendants have met their "substantial burden of justification" of this regulation, which invades a constitutionally-protected right of plaintiffs. The asserted justification of the regulation is that neat appearance and good grooming of the student body enhances the image of the school and its students among prospective employers recruiting on the campus, and thereby furthers the employment opportunities of the students upon graduation. That such was the purpose of the regulation is not disputed; there is nothing in the present record to impugn the good faith of the school in promulgating the hair code. Nor can it be doubted that assisting its students to find jobs upon completion of their courses is a legitimate concern of a vocational training school such as SMVTI. Plaintiffs contend that the regulation is not reasonably related to the accomplishment of this objective. But the record amply supports the joint judgment of the students, the faculty and the administration that beards and long hair styles are prejudicial to effective job opportunities in industry and that the economic welfare of the students is best served by the restraints imposed by the code. This is not a case in which the school authorities seek to uphold a regulation limiting students' individual freedom upon the basis of an "undifferentiated fear or apprehension of disturbance," Tinker v. Des Moines Independent Community School District, *supra,* 393 U.S. at 508, 89 S.Ct. at 737, or because of "some nebulous concept of school discipline," Breen v. Kahl, *supra,* 419 F.2d at 1037. The necessity

for this regulation is shown by the concrete and specific testimony of the Dean of Students as to the attitude of industry representatives with whom he has had wide contacts. In view of these considerations, this Court cannot say that the record does not demonstrate a constitutionally valid reason for the requirements of the code.

In summary, because of the school's interest in advancing the economic welfare of its students, because the hair regulations are reasonably calculated to further this interest, and because the regulations are grounded upon an adequate factual basis, the Court is satisfied that defendants have made a showing sufficient to sustain their substantial burden of justification.

Finally, it should be noted that the Court is aware of a number of recent cases in which similar school regulations have been before the courts. None of these cases, however, arose in a factual context which is similar to that presented by the case at bar. Two of these cases involved the summary dismissal of a student because of his hair style, apparently for no better reason than a school official's personal prejudice against long hair. In both cases the courts found that the school authorities had offered no rational basis for their action, and ordered reinstatement of the students. Richards v. Thurston, *supra*, aff'd 424 F.2d 1281 (1st Cir. 1970); Zachry v. Brown, *supra*. In the other cases which have been called to this Court's attention, the asserted justification for a hair regulation promulgated by the school authorities was that the regulation was necessary to maintain discipline; to avoid distraction of fellow students; to improve academic performance; or even for health or sanitary reasons. In three of these cases the courts found sufficient evidence to justify the regulations, and held them valid. Ferrell v. Dallas Independent School District, *supra*; Crews v. Cloncs, 303 F. Supp. 1370 (S.D.Ind.1969); Akin v. Board of Education of Riverside Unified School District, 262 Cal.App.2d 161,

68 Cal.Rptr. 557 (1968). *See also* Davis v. Firment, 408 F.2d 1085 (5th Cir. 1969). *Cf.* Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468 (1965). In four such cases the courts found that the school officials had failed to make a valid showing of any justification, and held the regulations invalid. Breen v. Kahl, *supra*; Griffin v. Tatum, *supra*; Calbillo v. San Jacinto Junior College, *supra*; Westley v. Rossi, *supra*; *cf.* Meyers v. Arcata Union High School District, *supra*. *See* Note, Developments in the Law—Academic Freedom, 81 Harv.L.Rev. 1045, 1157–1159 (1968). It is sufficient to state that all these cases are essentially different from the present one.

Before concluding, it must be observed that this Court has not been asked to say whether the SMVTI hair code is wise or whether its policy is a good one. It has been asked to hold that the regulation is unconstitutional. And that this Court cannot do.

Judgment will be entered denying the relief requested in the complaint and dismissing plaintiffs' action on the merits.

It is so ordered.