Don Leslie CHURCH, Jr., a minor, by his Father and Next Friend, et al., Plaintiffs,

v.

The **BOARD OF EDUCATION OF SA·LINE AREA SCHOOL DISTRICT OF WASHTENAW COUNTY, MICHIGAN,** et al., Defendants.

**Civ. A. No. 35399.**

United States District Court, E. D. Michigan, S. D.

March 9, 1972.

Raymond F. Clevenger, Ann Arbor, Mich., for plaintiffs.

John Wm. Thomas, Thomas & Delaney, Flint, Mich., for defendants.

## OPINION AND ORDER

KEITH, District Judge.

This case involves a school dress and grooming code adopted by the Saline Area Board of Education in Washtenaw County, Michigan, pursuant to authority granted to it under the laws of the State of Michigan. Plaintiff [1], Don Leslie Church, Jr., is presently a twelfth grade student attending school under a preliminary injunction issued by this Court on September 30, 1970 after his suspension from school for violation of the dress and grooming code.[2]

---

1. Per stipulation other named plaintiffs have been dismissed from this class action. The next friend is the father of plaintiff.

2. The code provides as follows: "5. Long hair cuts are not desirable. The hair must be cut or groomed so that the area above the eye brows is visible, the ears must not be covered, and in the back the area of the neck immediately above the normal collar position should be visible."

Counsel for the respective parties have submitted a detailed stipulated statement of facts which will be appended to this opinion: Appropriate references thereto will be made throughout the course of this writing by abbreviation "Stip. #_____".

This Court's jurisdiction is invoked by plaintiff under 42 U.S.C. § 1983, alleging a denial of his constitutional rights by defendants' acting under color of state law.

Plaintiff contends that the code infringes his fundamental constitutional right of freedom of speech under the First Amendment and that there is no countervailing compelling interest to justify the alleged infringement of this constitutional right. In this regard it is contended that since the only purposes of the regulation are the alleged stifling of dissent and the enforcement of social conformity the regulation is constitutionally impermissible and invalid on its face. It is also said that the school authorities cannot show any legitimate educational objectives to justify the regulation in question.

■ Defendants argue that this Court should abstain from passing on the constitutionality of the regulation thereby affording the state courts an opportunity to decide the question.[3]

Defendants also submit that the doctrine of *In Loco Parentis* should be applied to the instant action and that under such theory the Court should dismiss the case.

At the outset we must grapple with questions posed by the manner of disposition of four other "hair" cases by one of our colleagues in this district, and with the abstention argument advanced by defendants.

In a consolidated opinion of February 19, 1971, the Honorable Stephen J. Roth, U. S. District Court, Eastern District of Michigan, refused to exercise jurisdiction over cases No. 454, 35357, 35955 from the Southern Division, and No. 3069, Northern Division, holding that no substantial federal question was presented and that deference to the state court's was proper in matters such as these. Because the instant case presents circumstances not known to exist in the previous cases coupled with questions of constitutional import we are constrained to reach a different result than that reached by our colleague.[4]

Considering the arguments advanced by defendants in this matter with respect to abstention, it is our view that the equitable doctrine is inapposite in the instant case and we accordingly decline to invoke it in the exercise of our discretion. Foster v. City of Detroit, 405 F.2d 138, 145 (6th Cir. 1968). The abstention doctrine was first enunciated in Railroad Commission of Texas v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941) and allows the federal court to stay its hand when there is a constitutional challenge to a state law or regulation and narrowly limited "special circumstances" are present; Zwickler v. Koota, 389 U.S. 241, 248, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967). From these "special circumstances" comes the major justification given for abstention; i. e., the susceptibility of a state statute of a construction by the state courts that would avoid or modify the constitutional question. *Zwickler* at 249, 88 S.Ct. 391 citing Harrison v. NAACP, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152 (1959). Another situation where abstention may be considered appropriate which is lacking in the instant case, oc-

---

3. Defendants initially argued that abstention was proper because plaintiffs should be required to exhaust their administrative remedies. Since the inception of this action, however, the parties have stipulated that plaintiff has exhausted all state administrative relief. (Stip. #5)

4. See Garvin (Redford Student and Mobilization Committee) v. Rosenau, 455 F.2d 233 (6th Cir. 1972) reversing the instant court's abstention in a case alleging infringement of First Amendment rights.

curs when there is an "underlying issue of state law" which controls the litigation or the federal right asserted is "entangled in a skein of state law that must be untangled before the federal case can proceed." McNeese v. Board of Education, 373 U.S. 668, 83 S.Ct. 1433, 10 L. Ed.2d 622 (1963). In urging that we abstain defendants rely most heavily on the argument that the regulation here at issue may be construed by the state courts to be beyond the authority granted by the statute [5] whereunder it was promulgated. However, it is our opinion that McNeese, supra, belies such an approach. In McNeese plaintiffs proceeded in the Illinois Federal District Court under 42 U.S.C.A. § 1983, alleging a deprivation of their civil rights by virtue of an allegedly segregated educational system. In dismissing the suit on abstention grounds the Seventh Circuit Court of Appeals indicated that the failure of plaintiffs to follow the administrative remedy provided by an Illinois statute forbidding segregated education was fatal. The U. S. Supreme Court reversed stating that

> "[p]etitioners assert that respondents have been and are depriving them of rights protected by the Fourteenth Amendment. *It is immaterial whether respondents conduct is legal or illegal as a matter of state law. . . . Such claims are entitled to be adjudicated in the federal courts."* 373 U.S. 674, 83 S.Ct. 1437. (emphasis supplied)

While McNeese involved an administrative remedy, the language is such that considerable doubt is cast upon the applicability of the entire abstention doctrine to Civil Rights Act cases. However, assuming, arguendo, the applicability of the doctrine even those courts which hold such a view, are in accord

that there should be hesitancy in applying it: Wright v. McMann, 387 F.2d 519, 525 (2nd Cir. 1967); Holmes v. New York City Housing Authority, 398 F.2d 262, 266 (2nd Cir. 1968). Thus it seems to this Court that even if the regulation in question were to be found illegal under the state law, the plaintiff is entitled to a federal forum for the claims which he herein asserts. In McNeese the Court stated that "[r]elief under the Civil Rights Act may not be defeated because relief was not first sought under state law which provided a remedy. . . . [F]ederal courts [are] the chief * * * tribunals for enforcement of federal rights." 373 U.S. at 671–672, 83 S.Ct. at 1435–1436. In a similar vein it was said in Zwickler, supra, that "Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his federal constitutional claims." 389 U.S. at 248, 88 S.Ct. at 395.

It seems clear to us then, that when constitutional claims of the nature present in the case at bar are asserted the better course is to provide the litigant with the forum most appropriate to deal with them in lieu of forcing him into state courts.[6]

■ We find totally unpersuasive the "in loco parentis" argument advanced by defendants in their suggestion that the case should be dismissed, and we reject it. The contention that the school stands in place of the parent in matters such as the length of hair is untenable, especially since there is no indication that any disturbance to the educational system resulted thereby. In fact, the plaintiff in this case had total parental support in his decision to grow his hair; his father, for reasons similar to that of his son, also allowed his hair to reach a

---

5. Michigan Compiled Laws Annotated § 340.613 (1967) permits school boards to expel or suspend students who in its judgment have habits or bodily conditions detrimental to the school.

6. One of the factors influencing the opinion of the Court in the 4 "Hair" cases, supra, was the conservation of judicial energy. The recent decision of the Sixth Circuit Court of Appeals in Redford, supra, n. 4 negated this proposition when fundamental constitutional rights are involved.

length apparently considered undesirable by the citizens of the Saline community. There is no question that the school is expected to stand in the parents' place in certain areas during school hours but with respect to "intimately personal matters such as dress and grooming" it must share that responsibility with the parents. Breen v. Kahl, 419 F.2d 1034 (7th Cir. 1969) affirming 296 F.Supp. 702 (D.C.1969).

■ Having determined that abstention would not be properly invoked in this case, we now turn to the merits of the claim asserted by plaintiff.

Plaintiff's first argument is that the regulation in question infringes his right to freedom of speech under the First Amendment to the U.S. Constitution. The stipulated facts indicate that plaintiff had a twofold purpose in growing his hair longer than permissible under the code. His first purpose was "to present . . . a tangible continuously visible symbol of his personal viewpoint on the Vietnam war [since] plaintiff knew that his long hair would be identified by those in the Saline community with opposition to the war" (Stip. # 9) and secondly he allowed his hair to grow "in order to symbolize the importance of dissent generally" in opposition to the "oppressive intolerance for any dissent, which . . . was paradigmatically expressed by the Saline community in its school hair code" (Stip. # 10). Plaintiff then suggests that the "communicative effectiveness" of his decision was heightened by his father's action taken "at the same time, and for directly parallel reasons" (Stip. # 13). The record also indicates that there was substantial reaction among social acquaintances and classmates of the father and son which denigrated the patriotism and lifestyle of both as a result of their hair lengths.

Plaintiff also argued that the regulation on its face infringed his "more generalized constitutional right to individual diversity". However, in light of Gfell v. Rickelman, 441 F.2d 444 (6th Cir. 1971) this argument is abandoned, nor would this court deem it necessary to consider it in the absence of *Gfell, supra,* under the view we take of the first contention.

It should be noted at the outset what this case does not present. The situation here does not fall in the category of the First Amendment argument advanced in Jackson v. Dorrier, 424 F.2d 213 (6th Cir. 1970), cert. denied, 400 U. S. 850, 91 S.Ct. 55, 27 L.Ed.2d 88 where the Court found no protected First Amendment right because the plaintiffs allowed their hair to grow in violation of the grooming code for purely commercial purposes. Nor does this case elicit the confrontation between one's First Amendment rights and recognized responsibility of a school administration to maintain the decorum necessary to further the educational processes. Rather, the situation here is clear; it is stipulated that the plaintiff was symbolically expressing a political viewpoint and that no danger of violence or other impediment of school activities occurred.

It is the view of this Court that the suspension of plaintiff under the school dress code violated his First Amendment rights within the meaning of the U.S. Supreme Court decision in Tinker v. Des Moines Independent Community School District,[7] 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). We do not read *Gfell, supra* to reach the type of situation presented in the instant case; the interpretation apparently urged, sub silentio, by defendants would make *Gfell* directly inconsistent with *Tinker.* We do not believe that the Court of Appeals intended such a result.

■ *Tinker* made clear the proposition that symbolic acts, when communicative intent is present, may fall within

---

7. In *Tinker* the Supreme Court held that a school dress code banning the wearing of arm bands violated the First Amendment where there was no disruption of classes or interference with the rights of others and the apparel was clearly intended as a political expression.

the free speech clause of the First Amendment. It is the view of this Court that the stipulated facts in the instant case show that the political expression intended by the growing of long hair places the act within the ambits of the First Amendment as considered by *Tinker*. The facts here show the long process by which plaintiff arrived at his decision to grow his hair beyond the length permissible. This was not a mere whim or attempt to keep in tune with current fashion trends. Rather, there was clear communicative intent which was perceived by those at whom it was directed as a symbol of political expression. Thus, the instant case differs from the *Gfell* situation where the Court found no "serious question under the First Amendment" to have been raised. We conclude that a very serious First Amendment question has been raised under the facts of this case and that plaintiff's First Amendment rights have been violated. Accordingly, we find that the regulation is unconstitutional as applied to plaintiff Don Leslie Church, Jr., and those similarly situated. It is the further view of this Court that the regulation may not be enforced against any other students in the Saline High School in light of the peculiar circumstances present in this record; where the school authorities offer no cognizable educational justification for the regulation we hold that the effect of enforcement is to create a "chilling effect" on First Amendment rights of free speech and thus may not be enforced. Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965).

As a final observation this case brings to the Court's mind a statement once made by Judge Learned Hand which is fraught with continuously relevant wisdom and succinctly expresses this Court's oft stated and abiding concern with the protection of fundamental constitutional rights.

[The First Amendment] ". . . presupposes that right conclusions are more likely to be gathered out of a multitude of tongues, than through any kind of authoritative selection. To many this is, and always will be, folly; but we have staked upon it our all." United States v. Associated Press, 52 F.Supp. 362, 372 (D.C.S.D. N.Y.1943).

### ORDER

Therefore, it is ordered, that plaintiff and those similarily situated, as well as any other student having been suspended as a result of the provision at issue, be immediately reinstated with all privileges and rights heretofore accorded them.

It is further ordered that all evidence of student suspensions or any other disciplinary proceedings as related to the school hair length provision be totally and forthwith expunged from any and all school records of defendant school district by the appropriate officials.

### APPENDIX

### STIPULATION OF FACTS

It is hereby stipulated and agreed by and between the parties hereto, by their respective attorneys, as follows: ·

1. That William Francis Mennell has graduated from the Saline Area High School, and therefore, he and his father and Next Friend, William Joseph Mennell may be dismissed as one of the Plaintiffs in this suit.

2. That Dalton Wade Thigpen has left the Saline Area School District and has withdrawn from the Saline Area High School. Therefore, the said Dalton Wade Thigpen and his mother and Next Friend, Frances Thigpen may be dismissed as one of the Plaintiffs in this suit.

3. On September 10, 1970, Plaintiff Don Leslie Church, Jr., was informed by Defendant, Clement Corona, Assistant Principal of the Saline High School, that Plaintiff's hair style did not conform to the school dress and grooming code adopted in May, 1970, by the Defendant

Board of Education. That Code, which is still in effect, provides as follows:

"5. Long hair cuts are not desirable. The hair must be cut or groomed so that the area above the eyebrows is visible, the ears must not be covered, and in the back the area of the neck immediately above the normal collar position should be visible."

It is stipulated that Plaintiff's hair style violated this rule, and at the present time, continues to violate this rule.

4. On September 11, 1970, Plaintiff accompanied by his parents conferred with Defendant Corona and informed him that Plaintiff did not intend to cut his hair in order to comply with this rule. Thereupon Plaintiff was informed by Defendant Corona that he was suspended from school until he cut his hair in compliance with the rule.

5. On September 16, 1970, Plaintiff accompanied by his parents appeared before the Defendant Board of Education to urge that the Board rescind its hair style rule and permit him to reenter school. The Defendant Board refused Plaintiff's request. No further administrative remedy either before the Defendant Board or other State administrative agencies is available to Plaintiff. It is stipulated that Plaintiff has exhausted all State administrative relief.

6. On September 21, 1970, Plaintiff filed suit in the United States District Court for the Eastern District of Michigan, alleging that the hair style rule violated the United States Constitution. Following a show cause hearing, the Court, Honorable Damon J. Keith, on September 30, 1970, issued a preliminary injunction requiring that Plaintiff be permitted to attend school without cutting his hair, until final disposition of this suit. Since that order, Plaintiff has attended the Saline High School. There has been no disruption of classes or other disturbance in the school as a consequence of Plaintiff's long hair. Plaintiff's scholastic grades have improved from a B+ to an A— average during the past academic year and he has been an active participant in school affairs.

7. Plaintiff is a student in good standing at the Saline High School. In September, 1971, he will enter the twelfth grade at this school, and upon graduation he intends to pursue a college education. Plaintiff currently maintains an A— average. For his six academic courses during the past year, Plaintiff received four A's, one A—, and one B+ grades. In addition, Saline High School gives six Citizenship marks in each academic course. During the past year, of the 36 grades, Plaintiff received 32 "excellents" (the highest mark) and four "goods" (the second highest mark of five possible marks). Plaintiff is a member of the National Honor Society. On May 14, 1971, Plaintiff was elected by the Student Body at large to the Saline High School Student Council. He was appointed by the Student Council on May 29, 1971, to the Adult-Student Communications Liaison Committee on General Issues.

8. On November 11, 1969, Plaintiff accompanied by his parents attended a large public meeting in Ann Arbor, Michigan, organized to protest United States presence in Vietnam. Prior to that meeting, Plaintiff had been deeply troubled about the morality of this country's actions in Vietnam. At that meeting, the arguments made by many of the speakers brought together many of the Plaintiff's misgivings, and firmly persuaded him that United States presence in Vietnam was wrong and must be opposed by all lawful means. Plaintiff then spoke out, in his high school history class (which devoted one day each week to current affairs discussions) and informally to other students. His position was vehemently opposed by most students. Plaintiff was particularly disturbed that few of his peers were willing to dispute his arguments on their merits, but instead argued that his views were wrong because those views were also held by "bad people." To this effect, one student called him a "Communist" for believing that the United

States must leave Vietnam. Others stated in effect that "long-haired, violent, drug-taking radicals" also held that viewpoint, and since Plaintiff agreed with them, he must be one of them. These kinds of exchanges between Plaintiff and his peers continued throughout the 1969–70 school year.

9. As a direct consequence of the events described in Paragraph 8, Plaintiff decided, by the end of the 1969–70 school year, that he should permit his hair to grow long. His immediate purpose was to present to his peers, and those in the adult community in Saline whom he knew to hold identical beliefs, with a tangible, continuously visible symbol of his personal viewpoint on the Vietnam War. Plaintiff knew that his long hair would be identified by those in the Saline community with opposition to the War.

10. A second, equally important purpose motivated Plaintiff to grow long hair. The vehement opposition to his expressed viewpoints regarding the Vietnam War crystallized for Plaintiff his misgivings about intolerance for dissent generally in the Saline community. Saline was originally exclusively a farming community and is, with the gradual advent of small manufacturing enterprises, only slowly losing the characteristics of a semi-rural, totally homogeneous community. In Plaintiff's view, dissent has never been easily tolerated in Saline. As the dominant majority of the community sees the advent of some changes in Saline's social and economic composition, in Plaintiff's view, the "old guard" of the community appears even less tolerant of differences of viewpoint. In addition, Saline is located only about ten miles from Ann Arbor, and the desire of many Saline residents to keep away any change from their community often is expressed as a desire to differentiate Saline from Ann Arbor. That University community has often been described to Plaintiff by Saline residents as a "haven of long-haired drug-addict hippies." The school hair code was thus seen by Plaintiff and by many Saline residents

as an attempt to accentuate the community's difference from Ann Arbor, and to reinforce its self-image as a totally homogeneous community in which all "good citizens" not only looked alike, but thought alike. Outward appearance was, for Plaintiff and for many Saline residents, the visible sign of inward conformity of thought. This oppressive intolerance for any dissent, which was made vehemently evident when Plaintiff expressed his dissent regarding the Vietnam War, was paradigmatically expressed by the Saline community in its school hair code. Therefore, in order to symbolize the importance of dissent in general as well as his dissent on the specific issue of the War, Plaintiff believed that he must grow his hair long.

11. Plaintiff's decision to grow his hair long in order to express his convictions regarding intolerance for dissent in Saline, and particularly intolerance for dissent regarding the Vietnam War, was directly paralleled by a similar decision of Plaintiff's father, Don Leslie Church, Sr. Mr. Church, Sr., is a tool and die maker and has resided in Saline since 1959. Until September, 1970, he was an officer and active member in the Saline Masonic Lodge. Mr. and Mrs. Church attended the Ann Arbor anti-war rally with the Plaintiff (mentioned above in Paragraph 8). Following that rally Mrs. Church decided that she would wear an anti-war button. At a subsequent social gathering in the Church home, several guests—one an elected official of Washtenaw County, and others who were long-standing residents of the community—were outspokenly critical of Mrs. Church's viewpoint. Mr. Church indicated that he shared her view that the war should be ended. One guest then stated that if they held such views, the Churches were "son of a bitch Communists."

12. This episode crystallized for Mr. and Mrs. Church their previous dissatisfactions at, in their view, the intolerant narrow-mindedness and overweening pressures for ideological conformity that was the dominant tone of the Saline.

community. As a consequence of this re-examination, Mr. Church resigned from the Saline Masonic Lodge (though it was likely that he would have been designated the next Grand Master of the Lodge). At the same time, Mr. Church decided that he would let his hair grow long, to symbolize his attitudes toward the intolerance and intellectual conformity of the Saline community regarding opposition to the War and any dissident opinion. At the present time, Mr. Church's hair falls well below his collar, and in order to keep his hair from his eyes when he works, Mr. Church often wears a headband.

13. Though Plaintiff and his father let their hair grow long at the same time, and for directly parallel reasons, the parallelism in their thinking was not fully perceived by either until after this suit had been filed. At a pre-hearing conference of the Church family and their attorneys in this litigation, both father and son informed one another for the first time that each had been called a "Communist" for the views that each had expressed regarding the Vietnam War and each acknowledged to the other the role these experiences had played in determining that each would grow his hair long.

14. That in addition to the open defiance, as viewed by Defendant School District, that has been displayed by the Plaintiff Don Leslie Church, Jr., one of the teachers of the Saline Area School District resigned because of other students' defiance of discipline and changing attitudes of the children.

15. That since the Temporary Injunction was issued by this Court, another school district, that being Milan School District, which is approximately seven miles removed from the Saline Area School District, obtained an Order from the United States District Court for the Eastern District of Michigan, Southern Division, by Judge Stephen J. Roth dismissing their petition for Temporary Injunction. This complication between the two school districts has created, in the view of Defendant School Officials, a very difficult problem for the Saline Area Board of Education.

16. That this case and controversy may be decided upon the pleadings, these stipulated facts, the record heretofore made, and without further hearing or trial unless ordered by the Court.

Dated: September 20, 1971

(s) Raymond F. Clevenger
Raymond F. Clevenger
Attorney for Plaintiffs
111 South Main Street
Ann Arbor, Michigan 48108
(313) 769–7500

OF COUNSEL:

Paul Carrington
Robert Burt
University of Michigan Law School, Ann Arbor, Michigan

THOMAS & DELANEY
Attorneys for Defendants

By: (s) Jospeh H. Delaney
1100 Mott Foundation Building
Flint, Michigan 48502
(313) CE9–8154