Thomas BREEN, a minor, by his mother and next friend, Jane Breen; and James A. Anton, a minor by his parents and next friend, William and Marie Anton, Plaintiffs,

v.

William C. KAHL, individually and as State Superintendent of Public Instruction of the State of Wisconsin; David Hawley, individually and as Principal of Williams Bay High School; Arno D. Wehle, individually and as Superintendent of Williams Bay Schools; Robert R. Brown, individually and as a member of the Williams Bay Board of Education; Elmer M. Hansen, individually and as a member of the Williams Bay Board of Education; Marilyn Prugh, individually and as a member of the Williams Bay Board of Education; Harold McCarthy, individually and as a member of the Williams Bay Board of Education; Alice Morava, individually and as a member of the Williams Bay Board of Education, Defendants.

No. 68–C–201.

United States District Court
W. D. Wisconsin.

Feb. 20, 1969.

Sander N. Karp, Percy L. Julian, Jr., Madison, Wis., for plaintiffs.

Max C. Ashwill, Legal Consultant, Dept. of Public Instruction, Robert D. Martinson, Asst. Atty. Gen., Madison, Wis., for defendant Kahl.

R. G. Richardson, Jr., Delavan, Wis., for other defendants.

## OPINION, ORDER AND JUDGMENT

JAMES E. DOYLE, District Judge.

Plaintiffs have brought this action to challenge a regulation promulgated by the Williams Bay Board of Education. They seek a declaration that the regulation violates the Constitution of the United States, and an injunction against its continued enforcement.

Jurisdiction is asserted under 42 U.S.C. § 1983, and 28 U.S.C. §§ 1343(3) and (4), among other provisions. Jurisdiction is present. The defendants have acted, and they threaten to act, under color of law to deprive each of the plaintiffs of certain freedom of action. The central issue is whether the freedom involved is among the rights, privileges, or immunities secured to plaintiffs by the Constitution of the United States.

Trial has been had to the court, without a jury. Testimony, both by deposition and otherwise, and documentary evidence were received. Briefs have been filed and oral argument heard.

My findings of fact and conclusions of law appear in this opinion. Rule 52(a), Federal Rules of Civil Procedure.

As of September, 1968, the plaintiff Breen was enrolled as an eleventh grade student, and the plaintiff Anton was enrolled as a twelfth grade student, in the Williams Bay High School. Five of the defendants are members of the Williams Bay Board of Education (hereinafter, the Board) which, during the preceding academic year, had adopted this regulation affecting male students in the high school:

"Hair should be washed, combed and worn so it does not hang below the collar line in the back, over the ears on the side and must be above the eyebrows. Boys should be clean shaven; long sideburns are out."

The regulation has continued in force until the present.

Each plaintiff was expelled by the Board in early autumn, 1968, for the stated reason that the length of his hair exceeded the Board's standard. Plaintiff Anton had his hair cut to comply and he was readmitted. At the time of trial, he desired to allow it to grow to a length which would be in violation. The defendant Board members threatened that he would be expelled again if he did so. Plaintiff Breen has refused to comply and he has been denied readmission until and unless he does comply.

Each plaintiff petitioned the defendant State Superintendent of Public Instruction (hereinafter, the state superintendent) for review of the expulsion order, as permitted by Wisconsin stat-

utes. Following a hearing in the case of plaintiff Anton, the state superintendent terminated the appeal proceeding as moot. Following a hearing in the case of plaintiff Breen, the state superintendent found that Breen had persistently refused to comply with the haircut regulation, and that this "refusal * * * to obey said rule constituted a disruptive influence or factor within the school. * * *" [1] Citing Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (N.D.Texas, 1966), affirmed 392 F.2d 697 (5th Cir., 1968), cert. den., 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (Oct. 15, 1968), the state superintendent concluded that the expulsion was warranted, and he affirmed it. This action against him, the members of the Board, the principal of the Williams Bay High School (hereinafter, the principal), and the Superintendent of Schools in Williams Bay (hereinafter, the local superintendent) ensued.

The length of plaintiff Breen's hair at the time of his expulsion exceeded the Board standard, as the Board asserted, and it has continued to exceed that standard. The length of plaintiff Anton's hair at the time of his expulsion exceeded the Board standard, as the Board asserted, and at the time of the trial he did intend to permit it again to reach a prohibited length. No basis for the expulsion of Breen, or for the expulsion or for the threatened expulsion of Anton, is asserted, and in the record in this action none appears, other than a violation or threatened violation of the haircut regulation. The record contains no suggestion that the length of the hair constituted a health problem or a physical obstruction or danger to any person; I find that it did not. At no time while either plaintiff was in attendance in the high school with hair longer than the Board standard was any disruption or disturbance caused by the length of his hair. It is not suggested that the ap-

pearance of either plaintiff at any time, by reason of the length of his hair, was obscene. I find that the appearance of neither has been obscene, and that the appearance of plaintiff Anton, solely because the length of his hair may exceed the Board standard, would not be obscene.

I find that the dress and hair styles of the males in Williams Bay, generally, are conservative by current standards, and that few, if any males in Williams Bay wear their hair at lengths which exceed the Board standard.

I find that to deny a 16 year old eleventh-grade male and a 17 year old twelfth-grade male access to a public high school in Wisconsin is to inflict upon each of them irreparable injury for which no remedy at law is adequate. I make this finding by taking judicial notice of the social, economic, and psychological value and importance today of receiving a public education through twelfth grade.

Plaintiffs make no contention that the Board regulation is too vague. The complaint includes a contention that the Board's "dress code" is "overbroad on its face". I conclude that the provision of the code relating to hair styles, quoted above, is a discrete and independent section of the dress code. It may or may not be valid, but it is not "over" broad. Plaintiffs raise no contention here that procedural due process has been denied.

The issue is squarely raised: Does the Board regulation as applied to these plaintiffs violate the Constitution of the United States?

To achieve perspective, it may be useful to consider the validity of a similar regulation which might be applicable to adults: for example, a state statute or city ordinance making it punishable by fine or imprisonment for a male inhabitant to wear a beard; or, for example, a statute or ordinance denying enrollment

---

[1]. It should be noted that the state superintendent did not find that the length of the hair of either plaintiff was a disruptive influence or factor, but only that Breen's refusal to obey the rule was disruptive. This distinction is discussed hereinafter.

in a public adult education class in book-keeping to males whose hair exceeds a certain length; or, for example, a statute or ordinance forbidding access to public buildings or parks to adult females whose hair exceeds a certain length.

It defies credulity that a legislature or council would promulgate such a regulation. But if it should, it seems clear that the regulation would fall.

█ If, for adults wearing one's hair at a certain length or wearing a beard is viewed in part as a form of expression, that is, as a "course of conduct" in which "'speech' and 'nonspeech' elements are combined", only a "sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672 (1968). "* * * [A] government regulation is sufficiently justified if it is within the constitutional power of the government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." 391 U.S. at 377, 88 S.Ct. at 1679. Presumably, justification of the kinds of regulations of the hair styles or beards of adults, which I have hypothesized above, would be asserted in terms of the power of the state to regulate matters of health or safety, or perhaps, with respect to the adult education class, education. It cannot seriously be supposed that, with respect to adults, the regulations would be considered "no greater than is essential to the furtherance" of "an important or substantial governmental interest".

█ Whether wearing one's hair at a certain length or wearing a beard is a form of constitutionally protected expression is not a simple question.[2] Unquestionably, it is an expression of individuality, and it may be, although the record in this case is silent on the subject, that the manner in which many younger people now wear their hair is an expression of a cultural revolt.[3] In the view I take of this matter, however, it is unnecessary to reach a conclusion whether wearing one's hair at a certain length or wearing a beard falls within that category of "expression" protected by the First Amendment.

█ In my view, with respect to adults, freedom to wear one's hair at a

2. Plaintiffs' complaint here denies that they are expressing disrespect for authority or for the "Establishment" (although one of them testifies that his conduct may have grown into that because the regulation itself appears to him to be arbitrary and capricious). But they do assert that wearing their hair in a certain manner is a form of self-expression protected by the First Amendment.

3. The record here includes a deposition (taken at the instance of the defendants) by a principal of a public high school in a city about five miles from Williams Bay. In apparent seriousness he testifies: that "extreme hair styling" on boys especially "symbolizes something that I feel is not in the best interests of good citizenship"; that "whenever I see a long-hair youngster he is usually leading a riot, he has gotten through committing a crime, he is a dope addict or some such thing"; that "anyone who wears abnormally long hair, to the decent citizenry, immediately reflects a symbol that we feel is trying to disrupt everything we are trying to build up and by we I mean God-fearing Americans"; that the students at his high school share his opinion "that long hair symbolizes revolution, crime, and dope addiction"; that in his opinion "wearing long hair is un-American" in this day and age; and that its symbolism renders long hair a distraction. The "distraction" matter will be discussed hereinafter (although I mention here that it is difficult to see why hair styles which symbolize bad things are more distracting than those which symbolize good things). To the extent, however, that defendants may be contending that the state may suppress conduct precisely because it does express disapproved attitudes, the contention must fail. The First Amendment surely protects general expressions of opinion in favor of "revolution, crime, and dope addiction".

certain length or to wear a beard is constitutionally protected, even though it expresses nothing but individual taste. Difficulty might arise, as it did in Griswold v. Connecticut, 381 U.S. 479, 85 S. Ct. 1678, 14 L.Ed.2d 510 (1965), in determining which provision of the Constitution of the United States would be offended by such a regulation with respect to adults. Despite the difficulty, the Court there reached an inevitable judgment: that the freedom of a husband and wife to use contraceptives is a highly protected freedom. The opinion of the Court and the concurring opinions imply, or state, that a statute which rudely invades such a highly protected freedom does not enjoy the usual presumption of constitutionality; on the contrary, the state's subordinating interest in the regulation must be compelling, concurring opinion of Mr. Justice Goldberg, at 497, 85 S.Ct. at 1688, and the statute bears "a substantial burden of justification", concurring opinion of Mr. Justice White, at 503, 85 S.Ct. at 1691. See McLaughlin v. Florida, 379 U.S. 184, 196, 85 S.Ct. 283, 13 L.Ed.2d 222 (1964) (involving the right not to be discriminated against because of race).

■ Equally inevitable, I believe, would be a judgment that the freedom of an adult male or female to present himself or herself physically to the world in the manner of his or her choice is a highly protected freedom. An effort to use the power of the state to impair this freedom must also bear "a substantial burden of justification", whether the attempted justification be in terms of health, physical danger to others, obscenity, or "distraction" of others from their various pursuits. For the state to impair this freedom, in the absence of a compelling subordinating interest in doing so[4], would offend a widely shared concept of human dignity, would

assault personality and individuality, would undermine identity, and would invade human "being". It would violate a basic value "implicit in the concept of ordered liberty", Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937). It would deprive a man or a woman of liberty without due process of law in violation of the Fourteenth Amendment. See Griswold, 381 U.S. at 499–500, 85 S.Ct. at 1690 (Harlan, J., concurring).

The question here is whether this indignity, intolerable if imposed upon adults in the general society, may be visited upon these plaintiffs.

Defendants contend that it may: first, because plaintiffs are students in a public school; and, second, because plaintiffs are no more than 16 and 17 years of age. Neither reason, standing alone, is sufficient. As I have stated, similar regulations applicable to men and women attending a public adult education evening class in bookkeeping would undoubtedly fall. So would a similar regulation applicable to preschool children or to a sixteen year old who (in some parts of Wisconsin[5]) is no longer obliged to attend school and who may be employed on a farm or in a factory.[6]

We come then to the basis upon which this application of state power to these plaintiffs must ultimately be asserted: the combination of circumstance that they are enrolled in a public school and also that they are no more than 16 and 17 years of age.

Wisconsin statutes vest in the local Board the management of the affairs of the school district. Sec. 120.12(1), Wis.Stat. The Board is empowered to make rules for the government of the schools in the district. Sec. 120.13(1). The Board may expel a pupil who has persistently refused or neglected to obey

---

4. A comment upon the military and upon penal institutions is made hereinafter.

5. Sec. 118.15, Wis.Stat.

6. It should be noted that school regulations concerning hair styles necessarily affect the student while he is outside the school as well as within it.

a Board rule if the interest of the school demands his expulsion. Sec. 120.13(3).[7]

One general contention advanced by the defendants and by their witnesses is that this authority is vested in the Board, that the Board has chosen to exercise its authority with respect to this regulation affecting the length of students' hair, that the very failure by a student to respect any Board regulation is a cause of disruption in the school, that learning to respect authority is a part of the education of the students, and that judicial interference with the Board's authority will itself result in further disruption in this school and other schools.

■ That the courts should not casually interfere with the functions of other public agencies is a proposition so clear as to require neither repetition nor emphasis. Very recently, we were reminded:

"Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. * * * By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas, 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968).

■ But it must not be forgotten, however small the community, however familiar to one another the characters in the drama, that when a school board undertakes to expel a public school student, it is undertaking to apply the terrible organized force of the state, just as surely as it is applied by the police, the courts, the prison warden, or the militia. In the passage just quoted from *Epperson,* the Court quoted with approval the proposition that the "vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools." Shelton v. Tucker, 364 U.S. 479, 487, 81 S.Ct. 247, 251, 5 L.Ed.2d 231 (1960). In West Virginia Board of Education v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943), the Court met head-on the question whether the courts may and should intervene when liberty in public elementary and secondary schools is threatened by a regulation promulgated by a state board of education. It rejected the contention that it should refrain from interference with the school board's functions, observing that school boards have "important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights." 319 U.S. at 637, 63 S.Ct. at 1185. It rejected the contention that it should refrain from entering a field "where courts possess no marked and certainly no controlling competence", Minersville District v. Gobitis, 310 U.S. 586, 597–598, 60 S.Ct. 1010, 1014, 84 L.Ed. 1375 (1940); it commented that its duty to apply the Bill of Rights to assertions of official authority depends not upon the Court's possession of marked competence in the field where the invasion of rights occurs, "but by force of our commissions":

"We cannot, because of modest estimates of our competence in such specialties as public education, withhold the judgment that history authenticates as the function of this Court when liberty is infringed." 319 U.S. at 638–640, 63 S.Ct. at 1186.

The judgment of the district court enjoining enforcement of the school board regulation was affirmed.

■ To suggest that the public secondary schools should be immune from this constitutional scrutiny by the courts, with respect to the regulation of the length of students' hair, is to suggest a parallel between the public schools, on the one hand, and the armed forces or

---

7. Similar powers are granted, expressly or by implication, with respect to adult education, to a state board of vocational, technical and adult education, Wis.Stat., secs. 15.94, 15.941, and 41.13, and to local boards of vocational and adult education, sec. 41.15.

a penal institution, on the other. Fortunately, I am not called upon to pass upon the familiar practice of imposing stringent standards of personal appearance in the latter institutions. The practice, presumably, is rooted in considerations of discipline or *esprit de corps*, with respect to the military, and, with respect to penal institutions, in considerations of discipline or deliberate degradation of inmates. Of these considerations, the defendants have suggested discipline alone as a consideration appropriate to the schools. Even with respect to discipline, I do not understand them to contend that short haircuts may be required of high school students solely as an exercise of authority for its own sake and submission to authority for its own sake. The point made about discipline seems to be that the disciplinary powers of the school authorities will be diminished if this Board regulation is not upheld and these expulsions and threatened expulsions are not vindicated by the court.

Obviously the relationship of students, faculty, administrators, and school board will be affected in some degree by a judicial declaration of invalidity of a school board regulation. But if the regulation is fairly found to violate the Constitution, responsibility for these consequences rests with the agency which promulgated the regulation. So far as education of young people in obedience is concerned, it is important for them to appreciate the present vitality of our proud tradition that although we respect government in the exercise of its constitutional powers, we jealously guard our freedoms from its attempts to exercise unconstitutional powers.[8]

I am aware that other courts have rejected challenges to similar school regulations by characterizing the issue as

political or social, or by declining to involve the courts in a thicket best left to the school boards. Ferrell v. Dallas Independent School District, 261 F.Supp. 545 (N.D.Texas, 1966), affirmed 392 F.2d 697 (5th Cir. 1968), cert. den., 393 U.S. 856, 89 S.Ct. 98, 21 L.Ed.2d 125 (Oct. 15, 1968); Davis v. Firment, 269 F.Supp. 524 (E.D.La., 1967); Leonard v. School Committee of Attleboro, 349 Mass. 704, 212 N.E.2d 468, 14 A.L.R.3d 1192 (1965). But the students who are subjected to these regulations do not vote in school board elections; political redress of their grievances is not open to them; theirs is a situation in which judicial vindication of constitutional protections has been considered particularly appropriate. Edwards v. California, 314 U.S. 160, 174, 62 S.Ct. 164, 86 L.Ed. 119 (1941); South Carolina Highway Dept. v. Barnwell Bros., 303 U.S. 177, 185, n. 2, 58 S.Ct. 510, 82 L.Ed. 734 (1938). See NLRB v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 191, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967). Cautious counsel to avoid judicial involvement in serious constitutional issues merely because they concern younger people, in my view, is neither prudent, expedient, or just. It is time to broaden the constitutional community by including within its protections younger people whose claim to dignity matches that of their elders. See In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

I consider myself obliged, therefore, to determine whether the defendants have met the "substantial burden of justification" of this regulation which invades a freedom deserving a high degree of protection. Although variously stated by the witnesses and counsel, the asserted justification may be summarized as follows: (1) that in Williams Bay a male high school student whose hair is

---

8. There is a significant distinction between disruption which may be caused by the wearing of long hair, on the one hand, and disruption which may be caused by the very fact that a student has violated any Board rule, on the other. That disruption of the latter type may occur obviously affords no support for constitutionality of the regulation itself. For this reason I consider that the finding of the state superintendent, even if it were to be wholly accepted here, affords no support for the validity of the challenged Board regulation. See n. 1 *supra* and the related text.

longer than the Board standard so departs from the norm that his appearance distracts his fellow students from their school work; and (2) that students whose appearance conforms to community standards perform better in school, both in strictly academic work and in extra-curricular activities, than those whose appearance does not conform.

If the truth of both justifications were to be accepted, questions would nevertheless abound: Is it a desirable objective of our public schools to eliminate diversity within the school in order to eliminate distraction? On the contrary, is it not more vital to encourage experience with diversity and adaptation to it, in a diverse nation and world, than to encourage homogeneity? From the proposition that conforming students perform better than nonconforming students, does it follow that the performance of nonconforming students will improve if by threat of expulsion they are forced to conform?

But these are questions which one hopes would be raised by school board members, administrators, teachers, parents, and students. The question here is whether the defendants have carried the "substantial burden of justification."

With respect to the "distraction" factor, the showing in this record consists of expressions of opinion by several educational administrators that an abnormal appearance of one student distracts others. There is no direct testimony that such distraction has occurred. There has been no offer of the results of any empirical studies on the subject by educators, psychologists, psychiatrists, or other experts. Even in the opinions which have been received in evidence, there has been no amplification with respect to what portion of the students are susceptible to such distraction, how frequently susceptible students are likely to

be distracted for this reason, how quickly or slowly high school students accommodate to individual differences in appearance, or how the distraction actually manifests itself in terms of the behavior of the distracted students in various learning situations. From the testimony of the educational administrators, it appears that the absence of such amplification is not accidental; it arises from the absence of factual data which might provide the amplification.[9]

With respect to the "comparative performance" factor, this record is equally barren. The expert opinions are fewer than those on the distraction factor. No empirical findings are offered. No hard facts are adduced even from a limited sample to demonstrate that the academic performance of male students with long hair is inferior to that of male students with short hair, or that the former are less active or less effective in extra-curricular activities.

In many situations, no doubt, whether "a substantial burden of justification" of a regulation has been met is a delicate and uncertain matter. This is not such a situation. Defendants here have fallen far short of showing that the distraction caused by male high school students whose hair length exceeds the Board standard is so aggravated, so frequent, so general, and so persistent that this invasion of their individual freedom by the state is warranted. The same is true of defendants' showing with respect to the differential in school performance between male students with long hair and those with short hair.

Upon the entire record herein, and for the reasons given in this opinion:

It is hereby adjudged that the regulation of the Williams Bay Board of Education limiting the length of male students' hair, requiring male students to be clean shaven, and prohibiting long sideburns,

9. The testimony of plaintiffs' expert was to the effect that the literature in educational psychology, at present, does not support the conclusion that students are seriously distracted for any significant interval by the unusual appearance of a fellow student. However, I make no finding on the factual question. I conclude only that defendants have failed to meet the "substantial burden of justification".

violates the due process clause of the Fourteenth Amendment to the Constitution of the United States, and is null and void.

It is further ordered that the defendants are enjoined from continuing to enforce the said regulation of the Board, or from initiating the suspension or expulsion of either of the plaintiffs from the Williams Bay High School solely by reason of violation of the said regulation.

It is further ordered that each of the plaintiffs is to be reinstated as of February 24, 1969, or continued, as the case may be, as a student in the Williams Bay High School, with the same rights, privileges, and immunities as those which attached to his status as a student in said school prior to his suspension or expulsion.

It is further ordered that there shall be expunged from the Williams Bay High School records any notation revealing disciplinary action heretofore taken against each of the plaintiffs by reason of the said Board regulation.

It is further ordered that the plaintiffs are awarded their statutory costs and disbursements herein.