[Civ. No. 30620. First Dist., Div. Three. Jan. 22, 1973.]

JEFFERY McCRAE, Plaintiff and Appellant, v.
CALIFORNIA UNEMPLOYMENT INSURANCE APPEALS BOARD,
Defendant and Respondent;
PAUL MASSON VINEYARDS et al.,
Real Parties in Interest and Respondents.

## COUNSEL

Robert A. Baines, Edward Newman and Rippen, Hom & Ono for Plaintiff and Appellant.

Evelle J. Younger, Attorney General, and Asher Rubin, Deputy Attorney General, for Defendant and Respondent.

Pillsbury, Madison & Sutro, Noble K. Gregory, Charles F. Prael and Joe C. Creason, Jr., for Real Party in Interest and Respondent Paul Masson Vineyards.

No appearance for Real Party in Interest and Respondent Department of Human Resources Development.

## OPINION

**BROWN (H. C.), J.**—This is an appeal from a judgment denying a petition for writ of mandate. The petition sought to compel the payment of unemployment benefits to petitioner who was discharged for wearing his hair longer than the employer rules permitted.

The issue presented in this appeal is whether appellant is disqualified from unemployment insurance benefits under section 1256 of the Unemployment Insurance Code which provides in part as follows: "An individual is disqualified for unemployment compensation benefits if the director finds that he left his most recent work voluntarily without good cause or that he has been discharged for misconduct connected with his most recent work."

The facts disclose that on January 22, 1970, certain employees of Paul Masson Vineyards (including appellant) received a notice which stated as follows: "Our Company is engaged in food processing. All operations and personnel are viewed by the public in the course of our hospitality and guided tour program. The Company has acquired an excellent reputation for the cleanliness and sanitary appearance of its facilities. The personal cleanliness, neatness and well-grooming of our employees has been a contributing factor.

"When you applied to us for work, you were hired because you met our standards for personal appearance. However, your present appearance does not meet our standards and is considered detrimental to our Company's interest. Consequently, we are obliged to request that you improve your grooming and general appearance.

"If you fail to meet our standards of cleanliness, neatness and well-grooming by Monday, January 26, your employment will be terminated."

On February 4, the following memorandum was circulated setting forth the grooming standards more specifically: "Several newer employees have expressed a lack of understanding of what the Company has always regarded in the past as minimum requirements for personal cleanliness and safety to be eligible for hire and continued employment. For their benefit the following minimum requirements are enumerated

". . . . . . . . . . . . . . . . . . .

"5) Back hair length shall be trimmed to at least one inch above the shoulder level to be measured from the collar bone, rear atlas.

". . . . . . . . . . . . . . . .

"We expect everyone to conform to the above requirements. Those who do not will be so notified and given three (3) work days to conform. Failure to comply will result in suspension."

On February 16, appellant was discharged because his hair was longer than that prescribed. Other men were discharged at the same time, two for wearing full beards and three others for having long hair.

Mr. Morris H. Katz, an officer of Paul Masson Vineyards, testified that the action of the company was prompted by a desire to achieve or maintain a public image of sanitation and neatness. As evidence that the appearance of the discharged employees detracted from this public image, Mr. Katz introduced into evidence two comments from visitors to the vineyards. The company had erected a catwalk from which visitors touring the vineyards could survey all the operations except loading. Appellant and the other discharged employees were general winery workers. They stacked bottles, removed bottles from the filling line, and performed other similar tasks. They had no personal contact with visitors or customers but worked in an area where weekday visitors could see them at work. The adverse comments appeared on two visitors' cards out of 5,000 which had been turned in by departing guests.

Mr. Katz testified that other comments had been made orally to tour guides and hosts. In addition, Mr. Katz stated that the company felt the appearance of their employees as a group had suffered a general deterioration which was attributed to the example set by the bearded and long-haired individuals. There was no indication that the discharged employees were unkempt or dirty in their appearance and no suggestion that their hair

or beards were unsanitary or unsafe. There was no criticism of their competence at their work.

Appellant, a man 28 years old, started to work for Paul Masson Vineyears in October 1969, as a general winery worker. At the time of the referee's hearing, his hair "just hit his shoulders." At the time he was hired, it was perhaps one and one-half to two inches shorter but longer than the standard of February 4. At that time the woman in charge of personnel commented that he would look nicer in short hair and on his application noted, "Has long hair, will cut." Appellant testified that he had only remarked to the woman, after several comments on his hair, that he might cut his hair. He also testified that he was not told that his hair was a problem or against company rules. In the written rules given him to read at the time of hiring, there were no rules prescribing length of hair.

The referee asked appellant why he wore long hair and he answered that it identified a political and social viewpoint. The employer had offered the long-haired employees hairnets in order to achieve shorter hair and appellant was not asked why he had refused to wear the net.

There is no evidence in the record that appellant was other than an employee at will or hired for an unspecified time and, therefore, he could be discharged with or without cause. (See Lab. Code, § 2922.) The fact that his employer had the authority to discharge him is not determinative of appellant's right to unemployment benefits.

■ The meaning of "misconduct" as used in section 1256 of the Unemployment Insurance Code, justifying denial of unemployment benefits, is set forth in *Maywood Glass Co.* v. *Stewart,* 170 Cal.App.2d 719, 724 [339 P.2d 947], where the court said: " '. . . the intended meaning of the term "misconduct," as used in sec. 108.04(4)(a), Stats., is limited to conduct evincing such wilful or wanton disregard of an employer's interests as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect of his employee, or in carelessness or negligence of such degree or recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed "misconduct" within the meaning of the statute.' "

It is also now well settled that a government may not withhold benefits on condition that the prospective recipient surrenders his constitutional rights. Here appellant urges that he had the constitutional right to wear his hair at the length he desired as it expressed a political and social viewpoint.

The California Unemployment Insurance Program, although financed partly by a payroll tax on employers, is in fact a state benefit system, and the State of California, unlike a private employer, is subject to the proscriptions of the Fourteenth Amendment. We note an argument to the contrary was explicitly rejected by the California Supreme Court in *Syrek v. California Unemployment Insurance Appeals Board*, 54 Cal.2d 519, 532 [7 Cal.Rptr. 97, 354 P.2d 625]: " 'It is argued . . . that the unemployment insurance fund is part of an insurance system, is financed by a payroll tax on employers only, and is not a bounty granted by the state. . . . However, *once the tax has been collected, although the fund may be earmarked for a special purpose, it is the property of the State of California*. It has been held that the government may not withhold a privilege to which it has no vested right on condition that the prospective recipient surrender a constitutional right.' " (Italics added.)

In *King* v. *Unemployment Ins. Appeals Bd.*, 25 Cal.App.3d 199 [101 Cal.Rptr. 660], the court was called upon to decide whether a business machine serviceman dealing directly with the employer's customers could be denied unemployment benefits when his job was lost because he refused to shave his beard. The court agreed with the claimant that the wearing of a beard is symbolic conduct entitled to constitutional protection as a variant exercise of free speech. The court, relying upon *Sherbert* v. *Verner*, 374 U.S. 398 [10 L.Ed.2d 965, 83 S.Ct. 1790], then reasoned that the state, absent a compelling state interest, could not refuse unemployment benefits to one discharged solely because of the exercise of First Amendment rights.

Although we recognize that the length of a person's hair is as much a communicative symbol at this period in history as is the wearing of a beard, we have concluded that appellant's right to express himself through this symbol was not infringed. He was not required to cut his hair but was given the alternative of wearing it in a hairnet. Unlike a person whose hair must be cut or beard shaved, appellant could assume the hair style he preferred when off the job. The rules imposed by the respondent applied only during working hours. His rights to communicate his political and social ideas to those who might see him was not infringed but he had to exercise those rights and privileges on his own time.

We have concluded that appellant's constitutional rights were not infringed. We therefore need not investigate whether or not there existed a "compelling state interest" and now turn our attention to the question of whether appellant's refusal to comply with the grooming standards constituted misconduct. The standard by which the denial of unemployment benefits on the basis of misconduct is to be judged is whether the appellant wilfully disregarded his employer's interest in the deliberate violation of reasonable standards of behavior. (*Maywood Glass Co.* v. *Stewart, supra,* 170 Cal.App.2d 719, 724; Unemp. Ins. Code, § 1256.)

The record reveals that there was no relationship between appellant's long hair and his cleanliness or effectiveness as an employee. An employer, however, may be concerned about the reaction of the public even if that reaction is based upon misinformation about the significance of long hair and cleanliness.

■ We do not agree with appellant's contention that the only evidence that the long hair of employees had an adverse effect on the company's public image was hearsay. The visitors' cards were not offered for the truth of the matter contained therein but merely to prove that complaints had been made. For this purpose, the cards were not hearsay. (See Evid. Code, § 1200; *Am-Cal Investment Co.* v. *Sharlyn Estates, Inc.,* 255 Cal.App.2d 526, 540-541 [63 Cal.Rptr. 518].)

■ We agree that this was evidence of but a slight public reaction. The employer, however, may choose to heed even tremors of adverse reaction in an excess of caution to protect his business interests. Excessive caution is not necessarily unreasonable.

Appellant was informed of these matters and chose to continue wearing his hair long and unfettered. We agree that, under the circumstances, his refusal to comply was misconduct.

The judgment is affirmed.

Draper, P. J., and Caldecott, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 21, 1973.