663 So.2d 1382 (1995)
ADVANCED MOBILEHOME SYSTEMS, INC., Appellant,
v.
UNEMPLOYMENT APPEALS COMMISSION and Joseph W. Scott, Appellees.
No. 94-1023.
District Court of Appeal of Florida, Fourth District.
December 6, 1995.
*1383 Christopher D. Robinson of Fisher & Phillips, Fort Lauderdale, for Appellant.
John D. Maher, Tallahassee, for Appellee-Unemployment Appeals Com'n.
PARIENTE, Judge.
Advanced Mobilehome Systems, Inc. (employer) appeals an order of the Unemployment Appeals Commission (UAC) finding that its employee, Joseph W. Scott (claimant), was not disqualified from receiving unemployment benefits when he voluntarily quit because he refused to shave a few days' growth of facial hair in violation of employer's policy that employees should be neatly groomed. Because we find employer's policy, as applied to claimant, to be a reasonable grooming standard which did not implicate claimant's constitutional rights, we reverse.
Employer is in the business of installing and repairing roofs, primarily for privately-owned mobile homes. Claimant began his employment with employer in 1991 as a member of the roofing crew and was later *1384 promoted to the position of foreman. At the time claimant was hired, he was informed that employer intended that its employees maintain a "clean cut" appearance. Employees were permitted to wear beards or moustaches, as long as they were properly groomed and, in fact, claimant wore a moustache during his employment. Otherwise, however, employees were expected to be clean shaven. Employer reasoned that because its employees dealt directly with the customers, they should look presentable. To those ends, employer provided clean company T-shirts and shaving supplies.
On the day of claimant's separation from employer in March of 1993, claimant arrived at work with two or three days' facial hair growth from the weekend. The appeals referee determined that:
The reason the claimant left his employment is because he was upset when given corrective counseling by his supervisor. When the claimant arrived at work on March 8, 1993, he was told by the supervisor to go shave. The claimant had two or three-day growth of facial hair left over from the weekend. He was running late on the morning in question and had not shaved. The claimant had been informed at the time he was hired he was expected to [be] neat and clean for his presentation to homeowners, which were the primary customers of the employer. On numerous occasions the claimant had been required to shave before being allowed to go out to customer's [sic] homes to work. The claimant knew that he was to be clean shaven, but when confronted on this occasion, he was already upset because of his mother's health situation. The employer told him to go in and shave or leave. The claimant chose not to shave and walked out and left his job.
Prior to leaving, claimant never informed employer that he was trying to grow a beard or that there was either a health or religious reason for his facial hair. Rather, claimant testified that he did not try to discuss this with employer because he was fed up with what he perceived to be an unfair policy. The appeals referee denied claimant benefits finding that he voluntarily quit without good cause attributable to the employer.
While the UAC accepted the appeals referee's findings of fact, it rejected the referee's conclusion of law that claimant should be denied benefits:
Although the employer has a right to establish regulations and to expect that employees will follow them, the employee also has certain inherent rights which may be exercised without invoking a penalty under the unemployment compensation law. One of those inherent protected rights is the "freedom of an adult to present himself physically to the world in a manner of personal choice." Breen v. Kahl, 296 F. Supp. 702, 706 (W.D.Wis.), 419 Fed.2d 1034 (7th Cir. 1969), cert. denied, 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970). To contravene a protected freedom, the employer must demonstrate that its interest in setting and enforcing the rule is so substantial that it outweighs the resulting impairment of the claimant's constitutional rights.
The employer in this case has not sustained the burden of showing that reporting for work in an unshaved condition would adversely and irreparably impair its legitimate business interest or that there was a safety or sanitation requirement for the claimant to shave. The claimant was a roofing foreman. Although he had some contact with the general public in the course of his duty, that contact was minimal. The employer in this case has failed to demonstrate the reasonableness of the requirement that the claimant shave; consequently, the claimant is not disqualified from receipt of unemployment compensation benefits.
While it is not our province to reverse a final administrative order which is amply supported by competent substantial evidence, if we find "the agency has erroneously interpreted a provision of law," we have authority to set aside the order. See LeDew v. Unemployment Appeals Comm'n, 456 So.2d 1219, 1222 (Fla. 1st DCA 1984); § 120.68(9)(a), Fla. Stat. (1993). See also Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987 (Fla. 1985); *1385 Barry v. Faulk Inv., Inc., 621 So.2d 713 (Fla. 2d DCA 1993). We find the UAC's decision to be clearly erroneous in its conclusion that claimant's "inherent" constitutional rights were violated by employer's "neat and clean" policy; in its misapplication of principles of constitutional law to a private employer; and in the legal standard of proof UAC imposed on employer to justify the grooming standard.
Our analysis begins with acknowledging that the right to choose one's mode of personal hair grooming is protected from arbitrary state action by the Fourteenth Amendment of the United States Constitution which provides that "no State shall ... deprive any person of life, liberty, or property, without due process of law." While the United States Supreme Court has never directly held that an individual has a constitutional right to determine his or her particular appearance, see Kelley v. Johnson, 425 U.S. 238, 244, 96 S.Ct. 1440, 1444, 47 L.Ed.2d 708, 714 (1976), the law in the eleventh circuit has clearly established that the right of a citizen to determine his or her own appearance, including the mode of personal hair grooming, is "within the great host of liberties protected by the Fourteenth Amendment from arbitrary state action." DeWeese v. Town of Palm Beach, 812 F.2d 1365, 1367 (11th Cir.1987) (citing Lansdale v. Tyler Junior College, 470 F.2d 659, 663 (5th Cir.1972) (en banc), cert. denied, 411 U.S. 986, 93 S.Ct. 2268, 36 L.Ed.2d 964 (1973)); see also Dawson v. Hillsborough County, Fla. School Bd., 322 F. Supp. 286 (M.D.Fla. 1971), aff'd, 445 F.2d 308 (5th Cir.1971). Although concluding that an individual's right to determine his or her own physical appearance is protected from state action by the Fourteenth Amendment, the eleventh circuit in DeWeese noted that it is neither a fundamental right, nor a protected form of expression under the First Amendment. 812 F.2d at 1366 n. 4.
While claimant may have a liberty interest in his personal appearance which is protected from unreasonable intrusions by the government, the UAC erroneously subjected the private employer's policy to an improper level of scrutiny befitting governmental intrusions on First Amendment freedoms. Even when dealing with matters of personal appearance involving state action, a regulation interfering with personal appearance is subjected to review utilizing the rational relationship test. See Kelley; DeWeese. Such a regulation will be overturned only if arbitrary and irrational  if it bears no rational relationship to a legitimate governmental purpose. Kelley, 425 U.S. at 248, 96 S.Ct. at 1446, 47 L.Ed.2d at 716; DeWeese, 812 F.2d at 1365. See also City of North Miami v. Kurtz, 653 So.2d 1025 (Fla. 1995).
By the UAC's reliance on Breen in its order, the UAC further failed to distinguish between government regulations which affect the general citizenry and employment policies affecting employees. Breen involved the constitutional rights of male public high school students expelled for wearing their hair too long. The Supreme Court has consistently recognized that the government, when acting as an employer, has wider latitude in imposing restrictive regulations on its employees than it would in imposing regulations on the citizenry at large, even when dealing with sensitive areas such as First Amendment freedoms. See Kelley, 425 U.S. at 245, 96 S.Ct. at 1444-45, 47 L.Ed.2d at 714. Accordingly, "there is surely even more room for restrictive regulations of state employees where the claim implicates only the more general contours of the substantive liberty interest protected by the Fourteenth Amendment." Id.
In Kelley, a police officer challenged the constitutionality of a county's hair grooming regulation for the male members of its police force. In rejecting the challenge, the Supreme Court recognized a "highly significant" distinction between an ordinary citizen seeking constitutional protection against state-mandated grooming regulations and a public employee seeking similar protection. Id. at 244, 96 S.Ct. at 1444, 47 L.Ed.2d at 713-14.
More significantly, in this case the UAC was dealing with a private employer's regulation of its employees' personal appearance and not with governmental action. The UAC's order overturning the decision of the *1386 appeals referee failed to recognize a distinction between governmental action and the actions of a private employer. A private employer may impose reasonable conditions of employment, including standards regarding hair grooming and appearance, provided that the regulations are not discriminatory or pretextual so as to otherwise constitute a violation of the employees' civil rights. See Brown v. D.C. Transit System, Inc., 523 F.2d 725 (D.C. Cir.); cert. denied, 423 U.S. 862, 96 S.Ct. 121, 46 L.Ed.2d 91 (1975).
In Brown, terminated employees challenged their employer's regulations requiring that bus drivers be clean shaven, clean and neat, clothed in full regulation uniform and permitting drivers to wear moustaches but not beards. In rejecting the employees' constitutional challenge the court held:
Of course individual citizens have a constitutional right to wear beards, sideburns and mustaches in any form and to any length they may choose. But that is not a right protected by the Federal Government, by statute or otherwise, in a situation where a private employer has prescribed regulations governing the grooming of its employees while in that employer's service. The wearing of a uniform, the type of uniform, the requirement of hirsute conformity applicable to whites and blacks alike, are simply non-discriminatory conditions of employment falling within the ambit of managerial decision to promote the best interests of its business.
Heretofore we have summed up the problem in terms of private employment thus:
But equally it seems obvious to us, that one seeking an employment opportunity as in our situation where hair length readily can be changed, may be required to conform to reasonable grooming standards designed to further the employing company's interest by which that very opportunity is provided. There is no suggestion that the company regulation is pretextual or that it has been derived otherwise than in complete good faith.
Id. at 728-29 (emphasis in original) (citing Fagan v. National Cash Register Co., 481 F.2d 1115 (D.C. Cir.1973)).
However, while a private employer may be able to set reasonable restrictions on its employees' free exercise of their constitutional rights, we recognize that a denial by the state of unemployment compensation benefits to an employee who leaves employment because of policies which restrict his or her constitutionally-protected rights, especially the right to religious freedom, may be impermissible. This principle led the United States Supreme Court to reverse a denial of unemployment benefits by the Florida Unemployment Appeals Commission upon a finding that refusal to award unemployment compensation benefits to claimant, who was discharged when she refused to work on her Sabbath, violated the free exercise clause of the First Amendment. Hobbie v. Unemployment Appeals Comm'n of Fla., 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987). See also Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). Discussing the rationale of both Sherbert and Hobbie, the Supreme Court in Frazee v. Illinois Department of Employment Security, 489 U.S. 829, 832, 109 S.Ct. 1514, 1517, 103 L.Ed.2d 914, 919 (1989), explained:
In each of these cases, the appellant was "forced to choose between fidelity to religious belief and ... employment," ... and we found "the forfeiture of unemployment benefits for choosing the former over the latter brings unlawful coercion to bear on the employee's choice." In each of these cases, we concluded that the denial of unemployment compensation benefits violated the Free Exercise Clause of the First Amendment of the Constitution, as applied to the States through the Fourteenth Amendment.
The UAC therefore correctly stated that, as a general proposition, "the employee also has certain inherent rights which may be exercised without invoking a penalty under the unemployment compensation law."
However, here, claimant never asserted in the proceedings below that by requiring him to shave, employer was infringing on any constitutional right; he simply did not want to shave in violation of long-established company policy of which he was well aware. To claim that an unexplained refusal of an employee *1387 to shave his stubble is of constitutional magnitude would be to trivialize the Constitution. Accordingly, we need not reach the question of whether the state could properly deny benefits to an employee asserting that he or she was fired for exercising constitutionally protected liberties, which unlike those at issue in Sherbert, Hobbie, and Frazee are derived directly from the Fourteenth Amendment and not the First Amendment.
Therefore the remaining question is whether the UAC's reversal of the appeals referee's denial of benefits departed from the essential requirements of law. See Maynard v. Florida Unemployment Appeals Comm'n, 609 So.2d 143 (Fla. 4th DCA 1992); Alles v. Department of Professional Regulation, 423 So.2d 624, 625-26 (Fla. 5th DCA 1982). Neither the referee nor the UAC disagree that claimant voluntarily left his employment. The disagreement is whether claimant voluntarily left for good cause attributable to employer. The referee found that claimant may have left with good cause, but that it was not attributable to employer, while the UAC, based on an erroneous application of constitutional law, found claimant left with good cause attributable to employer.
An individual is disqualified from receiving unemployment compensation benefits in Florida if the employee voluntarily leaves employment without good cause attributable to the employer. § 443.101(1), Fla. Stat. (1993). "To voluntarily leave employment for good cause, the cause must be one which would reasonably impel the average able-bodied qualified worker to give up his or her employment." Uniweld Prods. Inc. v. Industrial Relations Comm'n, Fla. Dep't of Commerce, Tallahassee, 277 So.2d 827, 829 (Fla. 4th DCA 1973), and cases cited therein. "The applicable standards are the standards of reasonableness as applied to the average man or woman, and not to the supersensitive." Id.
The burden is on the claimant to prove that he has met the statutory eligibility requirements, which includes good cause for leaving his job. Id. This court has recognized that it is not "good cause attributable to the employer" if a claimant leaves because he does not like the working conditions, unless the working conditions "constitute unfair or unreasonable demands upon a claimant such that a reasonably prudent person would leave." Sollecito v. Hollywood Lincoln Mercury, Inc., 450 So.2d 928 (Fla. 4th DCA 1984).
Unemployment compensation benefits will not be paid when the employee either voluntarily quits or is discharged for noncompliance with a policy which is deemed reasonable. In Gulf Power Co. v. Florida Department of Commerce, 349 So.2d 848, 849 (Fla. 1st DCA 1977), the first district acknowledged case law from other jurisdictions that "an employer may, as a condition to employment, establish reasonable standards of appearance and dress of its employees."
In attempting to define what is reasonable, we note that in other jurisdictions, non-discriminatory dress and grooming codes have been upheld as legitimate job requirements in the workplace when they serve a business interest, such as presenting a certain image to the public. In McCrae v. California Unemployment Insurance Appeals Board, 30 Cal. App.3d 89, 106 Cal. Rptr. 159 (1973), a winery's hair-grooming requirement was held to be a "reasonable" means of protecting business interests since the employer could be concerned about the reaction of people taking tours through the winery. Thus, unemployment compensation benefits were properly denied when the employee was fired for misconduct when he refused to shave his shoulder-length hair. Although the employee had asserted that his long hair identified his political and social viewpoint, the California appellate court found the firing of the employee and the subsequent denial of benefits not to be unconstitutional:
Although we recognize that the length of a person's hair is as much a communicative symbol at this period in history as is the wearing of a beard, we have concluded that appellant's right to express himself through this symbol was not infringed. He was not required to cut his hair but was given the alternative of wearing it in a hairnet. Unlike a person whose hair must be cut or beard shaved, appellant could assume the hair style he preferred when *1388 off the job. The rules imposed by the respondent applied only during working hours. His rights to communicate his political and social ideas to those who might see him was not infringed but he had to exercise those rights and privileges on his own time.
Id. at 162.
Similarly, in Fagan, 481 F.2d at 1115, a technical employee, whose duties included visiting the offices of its employer's customers for purposes of repairing and servicing the employer's equipment, was discharged for failing to keep his hair neatly trimmed and combed in accordance with his private employer's regulations. The court of appeals observed:
Perhaps no facet of business life is more important than a company's place in public estimation. That the image created by its employees dealing with the public when on company assignment affects its relations is so well known that we may take judicial notice of an employer's proper desire to achieve favorable acceptance. Good grooming regulations reflect a company's policy in our highly competitive business environment. Reasonable requirements in furtherance of that policy are an aspect of managerial responsibility.
Id. at 1124-25. Accord Gladstone v. Catherwood, 30 N.Y.2d 576, 330 N.Y.S.2d 793, 281 N.E.2d 842 (N.Y. App. Div. 1972).
The UAC in its appellate brief actually concedes that "an employer may as a condition of employment establish standards of dress and appearance" if those standards are reasonable. However, because claimant is a roofing foreman with only some minimal contact with the general public, the UAC concludes the standards are not reasonable. The UAC attempts to distinguish Brown which involved bus drivers employed by a privately owned transit company who had been terminated because their facial hair did not conform to the company's requirements. However, contrary to the UAC's contention, the regulation in Brown did not further a safety interest, but only the company's interest in having employees in the public eye maintain a conservative and uniform appearance. See also Albertson's, Inc. v. Washington State Human Rights Comm'n, 14 Wash. App. 697, 544 P.2d 98 (1976).
The record reflects that employer has a legitimate business interest in ensuring its reputation among its customers. Specifically, claimant's duties involved contact with customers when he went to their homes. He would introduce himself, answer their questions and collect the bill when work was completed. The employees work outside and are visible to anyone who happens to pass by. Employer's policy was not unreasonable and its request that claimant shave on the morning in question was justified. There is no evidence that the policy was pretextual or that employer had used this requirement as a means to discriminate against claimant.
In this case, claimant was aware that employer wanted its employees to maintain a certain appearance from the time he was first hired. Claimant admitted that he was not the only employee asked to shave. In fact, claimant had complied with the policy several times in the past by shaving when requested. On the day in question, claimant chose not to discuss his refusal or present any reason for wanting to retain the growth.
Claimant is an adult with many constitutional rights and personal freedoms. He chose, on his own volition, to keep his three days of facial hair growth rather than his job. He had a right to quit his job if he were fed up with his employer's grooming standards, but he cannot now complain that his voluntary quitting constituted "good cause attributable to his employer."
Accordingly, we quash the order of the UAC with directions on remand that the claim for unemployment compensation benefits be denied.
REVERSED AND REMANDED.
GUNTHER, C.J., and STONE, J., concur.